**In re RIVER RANCH, INC., Debtor.**

**RIVER RANCH, INC., Plaintiff,**

**v.**

**OUTDOOR RESORTS RIVER RANCH INNS AND COTTAGES CONDOMINIUM ASSOCIATION, INC., R & R Trading Post, Inc., Defendants.**

**Bankruptcy No. 93–8213–8P1.**
**Adv. No. 94–684.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 19, 1995.

Richard Prosser, Tampa, Florida, for Plaintiff.

John Margolis, Miami, Florida, for R & R Trading Post, Inc., Defendant.

Jary V. Streitwieser, Tampa, Florida, for Outdoor Resorts River Ranch Inn & Cottages Condo Assn., Inc., Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a dismissed Chapter 11 case and the matter before the Court is a Complaint filed by River Ranch, Inc. (Debtor) against Outdoor Resorts River Ranch Inns and Cottages Condominium Associations, Inc. (Inns and Cottages) and R & R Trading Post, Inc. (R & R) (collectively, Defendants). In light of the fact that the issues were fully tried before the dismissal, this Court consented to decide the matter in spite of the dismissal of the Chapter 11 case.

Ordinarily, it is appropriate for the Plaintiff to seek a determination of the Debtor's ownership interest in property first, before seeking turnover of the rent derived from the lease of that property. In light of the fact that Plaintiff drafted the two counts of the Complaint in reverse order, this Court will also address the Counts in that order. In Count II of the Complaint, the Debtor seeks a determination by this Court of the ownership of a portion of property located in the development operated by the Debtor,

known colloquially as the Trading Post. Both the Debtor and the Inns and Cottages assert an ownership interest in the Trading Post. In Count I of the Complaint, the Debtor seeks turnover of rent paid by tenant R & R for the lease of this property. The facts relevant to resolution of this controversy, as established at the final evidentiary hearing, are as follows:

In the late 1980's the Debtor began the development of the River Ranch Resort, a resort located in Polk County, Florida, which the Debtor owns and operates. The development of the resort included the construction of condominium units, which are sublet as hotel rooms, and various other public buildings, such as a saloon, a beauty/barber shop, and recreational facilities. The condominium units are owned by private individuals, and the Debtor acts as the managing agent for the "condominiumized" hotel rooms and charges the unit owner a commission each time a unit is rented.

On April 24, 1987, the Debtor, as developer of the ranch property, filed with the State of Florida a Declaration of Condominium pursuant to the requirements of Chapter 718 of the Florida Statutes. (Plf's Exhibit No. 2) At the time the Declaration was filed, the complex included an L-shaped two-story building. The space occupied by the Trading Post is located on the first floor in the corner apex of the building, with individually-owned units on either side of the corner space. The entire building shares a common roof, and the corner space shares a wall with one of the privately owned condominium units.

Attached to the Declaration was Exhibit A, which set forth a metes-and-bounds legal description of the property conveyed into the condominium ownership. The legal description did not specifically exclude this corner space from the conveyance of condominium ownership. In fact, attached to the Declaration as Exhibit C, sheet 2, the legal description was set forth in a diagram wherein the corner space appears to be encompassed by the description. However, also attached to the Declaration was Exhibit C, sheet 6, wherein the corner space was delineated in a diagram as "not included parcel retained by developer."

On April 27, 1989, Debtor executed the First Amendment to the Declaration of Condominium, which included the same Exhibit C, sheet 6, this time with the corner space marked "retained by developer." In addition, sheet 9 of Exhibit C included a larger diagram of the corner space with the typewritten legend "not included parcel retained by developer lying between units 123–124 and units 125–126."

The metes and bounds legal description in Exhibit A was never changed by any subsequent amendments. Consequently, there has never been a separate tax bill for the corner space independent from the taxes levied on the common elements of the condominium property, and therefore the individual unit owners have paid the taxes on the corner space based on their fractional share of the common elements.

In 1992, the Debtor entered into a one-year lease agreement with R & R for the space known as the Trading Post, for the purpose of operating a souvenir and gift shop. (Plf's Exhibit No. 1) At the expiration of the lease on December 31, 1992, the lease was continued on a month-to-month by oral agreement. The terms of the written lease provided that R & R was to pay a rental fee of $250 per month plus 15% of the gross revenues from the Trading Post to the Debtor as rent. (Exhibit A) It also stated "In addition to the fixed monthly rental fee, Lessee shall pay to Lessor all items listed in Amendment B of this contract." (Plf's Exhibit No. 1) Attached to the lease is a document marked "AMENDMENT B" and entitled "LEASE PERCENTAGE OF SALES" wherein four items are listed. Those items are as follows:

1. **THE $250.00 IS FOR THE ELECTRIC BILL**

2. FIFTEEN PERCENTAGE (15%) WILL BE PAID ON GROSS SALES EXCEPT FOR THE FOLLOWING:

   A. FILM—PAID AT 30% OF GROSS PROFIT

   B. SALES ITEMS—PAID AT 30% OF GROSS PROFIT

3. ALL ORA RIVER RANCH PURCHASES WILL BE DEDUCTED FROM

THE RENT DUE IN THAT MONTH (10% DISCOUNT)

4. VAN PAYMENTS WILL BE DEDUCTED FROM THE RENT AT $500.00 EACH MONTH UNTIL FULL PRICE ($3,500) IS PAID

The Trading Post shares an electric meter with Inns and Cottages, which measures both the electricity used by the Trading Post and the electricity supplied to the common areas of the condominium/hotel units. The charge for electricity from this meter is billed to Inns and Cottages. The Debtor collected $250 a month from R & R for electricity consumption, and applied that money as a credit to a separate Inns and Cottages account for a second electric meter which is shared by the Debtor and Inns and Cottages for other areas of the resort property. The Lease also provided that R & R was responsible for any repairs made within the shop premises except for the roof, exterior walls, and structural components of the building were to be maintained by the Debtor (Plf's Exhibit No. 1).

On January 28, 1994, Inns and Cottages, acting as a representative for the individual unit owners, sent a letter to R & R, stating that R & R did not have a valid lease with the Debtor based on the assertion that the Debtor does not own the space occupied by the Trading Post. Inns and Cottages further asserted that R & R should either negotiate a lease with Inns and Cottages, or vacate the premises within 45 days. Subsequently, R & R commenced payment of all rental proceeds into a special account pending a decision as to the ownership of the corner space and entitlement to the rental proceeds by this Court.

Based on the foregoing facts, established by the record, it is the contention of Inns and Cottages that the Trading Post parcel was submitted to condominium ownership and became part of the common elements and as such is owned by the unit owners collectively. This would make the oral agreement between R & R and Debtor invalid and therefore all rents collected from R & R rightly belongs to Inns and Cottages as a part of the common assets, to be used to offset common expenses.

In opposition, Debtor contends that by virtue of the exclusion of the Trading Post area from the Condominium Declaration, Debtor is the owner of the area and for this reason it is the owner of the rents and proceeds from R & R and that they are not a part of the assets of Inns and Cottages or the unit owners collectively.

■ The condominium type of ownership in Florida is governed by Chapter 718 of the Florida Statutes which provides as follows:

**718.102 Purposes.**—The purpose of this chapter is:

(1) To give statutory recognition to the condominium form of ownership of real property.

(2) To establish procedures for the creation, sale, and operation of condominiums.

A condominium is created by filing a declaration of condominium in the public records of the county where the land is located, executed and acknowledged with the requirements for a deed § 718.104(2). However, it was not the intention of the Legislature that the mere act of filing the declaration would act as a conveyance of the land to the condominium association. In fact, the declaration itself is not a conveyance transferring title to land to another, rather it is a submission of the land to condominium form of ownership. When properly executed a declaration is entitled to recordation as an agreement relating to the conveyance of land because one of its primary functions is to establish condominium units which will subsequently be conveyed.

■ Upon the recording of the declaration, all units described in the declaration as being located in or on the land then being submitted to condominium ownership shall come into existence. § 718.104(2). At the time the Debtor filed the declaration, Debtor was the fee owner of the entire parcel of land described therein. The metes and bounds description used in the declaration to describe the land being submitted to condominium ownership contains the entire parcel of land owned by Debtor. The developer attached a graphic depiction to the declaration, marked Exhibit "C", to describe the layout and dimension of the units in the condomini-

um. On this exhibit it is clear that the units consist of numbers 101 through 112, and 114 through 126 on the first floor. There is also depicted an area clearly delineated with dimensions and conspicuously marked "NOT INCLUDED PARCEL RETAINED BY DEVELOPER." This area, now known as the Trading Post, was intentionally shown and retained by the developer so as to avoid being misconstrued as a part of the common area.

The Inns and Cottages claims that there is an ambiguity in the declaration regarding this drawing and therefore the Debtor does not own the Trading Post unit and is not entitled to rents from it. It is without dispute that the Debtor owned the land prior to submitting it to condominium form of ownership and continues to own everything in the condominium until such time as the Debtor conveys the individual units and the undivided share in the common elements appurtenant to them. The graphical depiction is the only item in the declaration which identifies the units and sets them apart from the common area. Section 718.103(24) defines "Unit" as a part of the condominium property which is subject to exclusive ownership. Section 718.104(4)(d) requires that the declaration contain or provide for an identification of each unit by letter, name, number, or combination thereof, so that no unit bears the same designation as any other unit.

The Trading Post unit is a part of the condominium property and is exclusively owned by the Debtor. The Trading Post unit is clearly identified in the declaration on sheet 6 and sheet 9 of Exhibit "C" as the "not included parcel retained by developer lying between unit 112 and common area adjacent to unit 114." On sheet 6 of Exhibit "C", item number 2 refers to sheet No. 9 for the "typical unit plan" and the Trading Post unit is shown exclusively in detail on sheet No. 9.

This intention of the Debtor to make and retain the Trading Post unit is further evidenced by the First Amendment to Declaration of Condominium filed by the Debtor. This amendment redefined the units and amended their unit numbers to correspond with the increased total number of units available. However, the unit retained by the developer remained on the new exhibits to the First Amendment and was properly incorporated into the original declaration.

It is the opinion of this Court that the Trading Post unit is owned by the Debtor and Debtor is therefore entitled to turnover of rental proceeds generated by the lease of this property to R & R. This leaves for consideration the appropriate set-offs for rent paid, common expenses, ad valorem taxes, percentage of common elements and utilities paid. Inasmuch as the general case has been dismissed, this Court is satisfied these issues of accounting are more appropriately resolved by the state court. Therefore, this Court declines to retain jurisdiction over Count I of the Complaint. A separate final judgment shall be entered in accordance with the foregoing.