Richard D. KUNICA, Plaintiff,

v.

ST. JEAN FINANCIAL, INC.
and Walter L. Rogers,
Defendants.

No. 97 Civ. 3804(RWS).

United States District Court,
S.D. New York.

April 22, 1999.

Hartman Underhill & Brubaker LLP, Lancaster, PA, by Stephen R. Luzan, of counsel, for plaintiff.

Baer Marks & Upham LLP, New York City, by Neal S. Barlia, Jay L. Gottlieb,

Alexander D. Widell, of counsel, for defendant.

## OPINION

SWEET, District Judge.

Defendants St. Jean Financial, Inc. ("St. Jean") and Walter L. Rogers ("Rogers," and collectively the "Defendants") have moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment and dismissing the Amended Complaint of plaintiff Richard D. Kunica ("Kunica"). For the reasons set forth below, Defendants' motion is granted.

### The Parties

Kunica is a Canadian resident.

St. Jean is a Delaware corporation with a registered address in Wilmington, Delaware, and principal places of business in New York, New York and London, England.

Rogers is a New York resident and was at all relevant times Director of St. Jean.

### Prior Proceedings

The facts and prior proceedings of this action are set forth in a prior opinion of the Court, familiarity with which is assumed. See Kunica v. St. Jean Financial, Inc., 1998 WL 437153 (S.D.N.Y. August 3, 1998). Those facts and proceedings relevant to the instant motion are set forth below.

Kunica commenced this action in the Supreme Court of the State of New York, County of New York, by filing a Summons with Notice on March 27, 1997. On May 23, 1997, the Defendants removed the case to this Court on diversity grounds. Kunica filed the Complaint on October 31, 1997.

Defendants filed a motion to dismiss on December 22, 1997. Kunica then filed an amended complaint (the "First Amended Complaint") on January 30, 1998, and Defendants withdrew their motion to dismiss on February 23, 1998 by stipulation.

On March 6, 1998, Defendants filed a motion to dismiss this action, and to dismiss Kunica's claim for punitive damages. By Opinion and Order dated August 3, 1998, the Court granted the motion to dismiss plaintiff's claims as to breach of oral agreement, fraud and tortious interference with business relations, and dismissed Kunica's claim for punitive damages. Plaintiff's claims for breach of written agreement and promissory estoppel were sustained. See Kunica, 1998 WL 437153.

The instant motion for summary judgment was filed on October 27, 1998, and was heard on February 3, 1999. Additional submissions were received through April 19, 1999, at which time the motion was deemed fully submitted.

### Facts

### The Remaining Claims

Kunica is the alleged assignee of the claims of Sci–O–Tech, Inc. ("Sci–O–Tech"). In Count I of his Amended Complaint, Kunica alleges that St. Jean breached a written agreement with Sci–O–Tech to take out the secured position of its primary lender, Fremont Financial Corporation ("Fremont"). In Count V, Kunica asserts a promissory estoppel claim against Defendants arising out of Rogers' alleged promise to Sci–O–Tech to find a lending source for Sci–O–Tech. Kunica alleges that Defendants' actions caused Sci–O–Tech to suffer damages in excess of $2 million.

### I. The Sci–O–Tech Bankruptcy

Sci–O–Tech filed a voluntary Chapter 11 bankruptcy petition (the "Petition") on September 14, 1994, in the United States Bankruptcy Court for the Eastern District of Pennsylvania. At the time Sci–O–Tech filed the Petition, Kunica, Ltd. owned 100% of the outstanding shares of the common stock of Sci–O–Tech, and Kunica was the President of Kunica, Ltd. and Sci–O–Tech.

On September 23, 1994, shortly after Kunica filed the Petition, Kunica, Ltd. con-

summated an agreement with Tyler E. Scheuler ("Scheuler") for the sale of 75% of the issued and outstanding shares of Sci–O–Tech common stock. As the new majority shareholder, Scheuler assumed full responsibility for the management and day-to-day oversight of Sci–O–Tech's operations.

On October 21, 1994, Sci–O–Tech filed its Schedules of Assets and Liabilities (the "Schedules"). On January 25, 1995, Sci–O–Tech filed its plan of reorganization (the "Plan"). In the Plan, Sci–O–Tech expressly reserved the right to initiate litigation with respect to any claim or cause of action maintainable by Sci–O–Tech, to modify the Plan, and to revoke or withdraw the Plan before the confirmation date. Simultaneously with the filing of the Plan, Sci–O–Tech filed a proposed disclosure statement. (The "Original Disclosure Statement"). Notice of the filing of the Plan and the Original Disclosure Statement was provided to all creditors and parties in interest, who were instructed to file their objections to the Original Disclosure Statement no later than February 17, 1995. In its Original Disclosure Statement, Sci–O–Tech stated that:

> Litigation against third parties who defaulted on commitments to lend or invest in the Debtor is quite likely to occur. The outcome of that litigation is uncertain, so no recovery amount is included in the projections attached to Article 4.01. Some recovery on these Causes of Action may be required just to offset higher than anticipated Allowed Claims.

(Original Disclosure Statement at 12). Sci–O–Tech also stated in a footnote that:

> The Debtor believes that Causes of Action may exist against one or more of the defaulting lenders/equity partners, but the feasibility of expensive litigation against out-of-state defendants is unclear. Nevertheless, these Causes of

Action have not been waived and are expressly preserved under the Plan.

(*Id.*, at 4, n. 1).

On February 17, 1995, Kunica and Mrs. Kunica filed an objection to the Original Disclosure Statement. The Kunicas maintained that the Original Disclosure Statement was deficient because it did not contain adequate information concerning:

> (f) [t]he existence, likelihood and possible success of non-bankruptcy litigation, including potential lender liability claims and conflict of interest claims (the Kunicas believe that several such claims exist, that such claims may have significant value, and that, if such claims are not disclosed, the Debtor may be equitably estopped from later prosecuting such claims in a non-bankruptcy forum).

(Kunicas' Objections to Disclosure Statement for Debtor's Plan of Reorganization ¶ 7).

Kunica avers that from February 9, 1995 through February 22, 1995, during several telephone conversations the Kunicas' counsel negotiated with counsel for Sci–O–Tech and counsel for the Official Unsecured Creditor's Committee (the "Committee") concerning the Kunicas' proposed revisions to the Plan and the Original Disclosure Statement. According to Kunica, during those telephone conversations, Sci–O–Tech's potential claims against St. Jean, Rogers and Arthur Andersen & Co. (the "Claims") were openly discussed and fully disclosed.

On February 23, 1995, immediately prior to the hearing on the Original Disclosure Statement, Scheuler, counsel for Sci–O–Tech, counsel for Sci–O–Tech's landlord, the McKesson Corporation, counsel for the Committee, and counsel for the Kunicas, met at the bankruptcy court to discuss, "among other things," the Kunicas' objections to the Original Disclosure Statement and the Plan. (Plaintiff's Rule 56.1 Statement ¶ 11).

Kunica submits that at the meeting on February 23, the parties reached the following understanding:

(a) Sci–O–Tech would assign to Kunica, as additional compensation under the Plan, all of its pre-petition, non-bankruptcy, non-ordinary course claims or causes of action against third parties, effective as of the effective date of the Plan;

(b) the Plan would be revised prior to its confirmation to provide for such assignment;

(c) Scheuler, Sci–O–Tech and the Committee would not file any objections to the Kunicas' secured and unsecured claims against the estate; and

(d) the Kunicas would withdraw their objection and refrain from filing any objection to the Plan.

(Plaintiff's Rule 56.1 Statement ¶ 13).

On February 24, 1995, Sci–O–Tech filed an amended disclosure statement for the Plan (the "Amended Disclosure Statement"). The Amended Disclosure Statement states that:

(a) The Debtor believes that Causes of Action may exist against one or more of the defaulting lenders/equity participants, but the feasibility of pursuit of expensive litigation to uncertain conclusion against out-of-state defendants is unclear. Nevertheless, these Causes of Action have not been waived and are expressly preserved under the Plan. (Amended Disclosure Statement § 2.01 at 4, n. 1).

(b) The Plan reserves for the Reorganized Debtor the right to pursue all Causes of Action and to initiate Causes of Action after the Confirmation Date, including Bankruptcy and Insolvency Related Causes of Action. (Id. § 3.11 at 8).

(c) Litigation against third parties who defaulted on commitments to lend or invest in the Debtor is quite likely to occur. The outcome of that litigation is uncertain, so no recovery amount is included in the projections attached to Article 4.01. Some recovery on these Causes of Action may be required just to offset higher than anticipated Allowed Claims. (Id. § 4.05 at 11).

By Order dated February 24, 1995, the Bankruptcy Court approved Sci–O–Tech's Amended Disclosure Statement and directed Sci–O–Tech to distribute the Amended Disclosure Statement, Plan of Reorganization and balloting materials to its creditors and parties in interest. Thereafter, Sci–O–Tech distributed its Plan and Amended Disclosure Statement, but on March 17, 1995, Sci–O–Tech withdrew its Plan because it believed that it would not be able to fulfill its obligations thereunder.

On April 27, 1995, Sci–O–Tech and Lumex Bed Systems, Inc. ("Lumex") executed an agreement for the sale to Lumex of substantially all of Sci–O–Tech's assets (the "Agreement"). Paragraph 10 of the Agreement provides that: "Not included in the assets to be sold pursuant to the Asset Purchase Agreement are cash, and certain receivables and lender liability claims enumerated in Schedule 1(c)(iv) thereto." Schedule 1(c)(iv) to the Agreement described the excluded claims as follows:

(a) all existing claims or causes of action of Sci–O–Tech, Inc. against St, Jean Financial, inc., Arthur Andersen & Co., Mark Szporka and Walter Rogers, or any affiliated or related entity or individual;

(b) account receivable/claims against Allied Medical, Inc. and AMI Manufacturers Representatives (affiliated entity), of Westland, Michigan; and

(c) claims against Techmatic Products, Inc. and related parties, Dreamland, Edward R. Traub, and Francis McCarthy.

(Lazun Decl., Ex. 19).

Defendants allege that in its motion for approval of the sale, Sci–O–Tech failed to provide the bankruptcy court with a

Schedule 1(c)(iv). By Order dated May 16, 1995, the Bankruptcy court approved the sale of substantially all of Sci–O–Tech's assets to Lumex.

On September 13, 1995, the United States Trustee moved to dismiss Sci–O–Tech's bankruptcy case or convert it to one under Chapter 7 of the Bankruptcy Code. In its motion, the Trustee stated that "Debtor's failure to timely file and obtain [creditor] approval of a disclosure statement and confirmation plan of reorganization and the lack of any continuing operations evidence Debtor's inability to effectuate a plan of reorganization and may constitute unreasonable delay by the Debtor which is prejudicial to creditors, all of which are grounds for conversion or dismissal pursuant to 11 U.S.C. § 1112(b)(2) and (3)." (United States Trustee's Motion to Dismiss or Convert to Chapter 7 at ¶ 4).

On September 27, 1995, Sci–O–Tech joined in the Trustee's motion, but requested that the bankruptcy court dismiss its case, rather than convert it to a Chapter 7, because "no purpose would be served by Debtor remaining in bankruptcy." (Widell Decl., Ex. I at ¶ 8). By Order dated October 26, 1995, the bankruptcy court dismissed Sci–O–Tech's bankruptcy case, effective December 29, 1995.

On February 27, 1996, Sci–O–Tech assigned the Claims to Kunica in consideration of $10 and "other good and valuable consideration." Kunica commenced this action about one year later on March 27, 1997.

### Discussion

#### I. *Defendants' Motion for Summary Judgment is Granted*

#### A. *Standard for Summary Judgment*

A motion for summary judgment may be granted only when there is no issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ. P.; *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant . . . a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991). If, on the other hand, a reasonable finder of fact could return a verdict for the nonmoving party, there is a genuine factual dispute and summary judgment should not be granted. *See Zeevi v. Union Bank of Switzerland*, 1992 WL 8347, *4 (S.D.N.Y. Jan. 14, 1992). "[T]he trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219 (2d Cir. 1994).

Defendants maintain that summary judgment is warranted in this action because Kunica lacks standing to bring this action and is judicially estopped from bringing this action.

#### B. *Standing*

Defendants contend that Kunica lacks standing to assert Sci–O–Tech's Claims because Sci–O–Tech failed to disclose the existence and value of those Claims to its creditors and the bankruptcy court in its Schedules or at any time during the pendency of its Chapter 11 case.

A basic tenet of bankruptcy law is that all assets of the debtor, including all pre-petition causes of action belonging to the debtor, are assets of the bankruptcy estate that must be scheduled for the benefit of creditors. *See Seward v. Devine*, 888 F.2d 957, 963 (2d Cir.1989); *Rosenshein v. Kleban*, 918 F.Supp. 98, 102 (S.D.N.Y.1996); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988). The debtor may recover property of the estate, such as a cause of action, in only two ways. First, upon confirmation of a plan of reorganization, all of the property of the estate vests in the

debtor, although only property that was "dealt with by the plan is free and clear of all claims and interests of creditors...." 11 U.S.C. § 1141(b)–(c). Because undisclosed claims are not "dealt with" by the plan, they do not revert to the debtor free of the claims of creditors. *See Kleban* 918 F.Supp. at 102 (*citing Pako Corp. v. Citytrust*, 109 B.R. 368, 376 (D.Minn.1989)).

Second, property may be removed from the estate if it is abandoned to the debtor. *See* 11 U.S.C. § 554. Property that is scheduled pursuant to U.S.C. § 521(1), but not administered by the plan, is abandoned to the debtor by operation of law at the close of the bankruptcy case. *See* 11 U.S.C. § 554(c). "By contrast, property that is not formally scheduled is not abandoned and therefore remains part of the estate." *Kleban*, 918 F.Supp. at 102 (*citing* 11 U.S.C. § 554(d)); *see also In re Drexel Burnham Lambert Group, Inc.*, 160 B.R. 508, 514 (S.D.N.Y.1993). Courts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to bring such claims after emerging from bankruptcy, and the claims must be dismissed. *See Kleban*, 918 F.Supp. at 102; *Drexel*, 160 B.R. at 514.

A debtor may not conceal assets and then, upon termination of the bankruptcy case, utilize the assets for its own benefit. *See Kleban*, 918 F.Supp. at 102. The Supreme Court has held that:

> [i]t cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee has never taken any action in respect to it.

*First Nat'l Bank of Jacksboro v. Lasater*, 196 U.S. 115, 119, 25 S.Ct. 206, 49 L.Ed. 408 (1905).

Kunica contends that "Defendants' lack of standing argument is fatally flawed because it glosses over the controlling statutory provision and fails to address the critical fact that Sci–O–Tech's case *was dismissed* prior to the confirmation of any plan of reorganization." (Plaintiff's Brief at 11) (emphasis in original). Kunica maintains that because Sci–O–Tech's bankruptcy was dismissed—as opposed to one in which the debtor received a discharge or a plan was confirmed—the Claims automatically revested to Sci–O–Tech pursuant to § 349(b) of the Bankruptcy Code regardless of disclosure. Kunica states that 349, unlike § 554(c), does not condition the reversion of estate property on such property having been properly scheduled.

Section 349 of the Bankruptcy Code provides, in relevant part, that "a dismissal of a case ... revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). As stated in the legislative history, the purpose of § 349(b) is to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6294; *see also In re Kucera*, 123 B.R. 852 (Bankr.D.Neb.1990).

Kunica reasons that the general effect of an order of dismissal is to restore the *status quo ante,* and, therefore, upon dismissal of the Sci–O–Tech bankruptcy case, Sci–O–Tech's potential claims against the Defendants immediately and automatically reverted to Sci–O–Tech by operation of law. Kunica concludes that Sci–O–Tech was thus free to assign the Claims to plaintiff and, consequently that plaintiff, as the lawful assignee, has standing in this case.

A dismissal of a bankruptcy case, however, as opposed to a discharge, should not provide a debtor with a safe harbor against lack of standing to pursue causes

of action that were not properly disclosed. The parties do not cite and independent research has not revealed any authority dealing with the effect of dismissal on non-disclosed claims. However, the key issue in this case is not dismissal nor discharge, but disclosure.[1]

Section 521 of the Bankruptcy Code outlines a non-exhaustive list of the debtor's duties in a bankruptcy case. Pursuant to § 521(1), a debtor is required to "file a ... schedule of assets and liabilities ... and a statement of the debtor's financial affairs...." 11 U.S.C. § 521(1). An additional obligation is imposed by 11 U.S.C. § 1125(b) mandating the filing of a disclosure statement containing "adequate information." Section 1125(a) defines adequate information as follows:

§ 1125. Postpetition disclosure and solicitation

(a) In this section—

(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan....

Disclosure is the "pivotal" concept in Chapter 11 reorganization. 5 *Collier on Bankruptcy*, ¶ 1125.03 (15th ed. 1992) As described in the House Report:

If adequate disclosure is provided to all creditors and stock holders whose rights are to be affected, then they should be able to make an informed judgment on

their own rather than having a court or the Securities and Exchange Commission inform them in advance whether the proposed plan is a good plan. Therefore the key to the consolidated chapter is the disclosure section.

*Id.* At ¶ 1125.02 (*quoting* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 226 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963, at 6184). The Bankruptcy Code requires disclosure to protect creditors from a debtor who may try to hide assets and maximizes judicial efficiency. *See* Nicholas S. Gatto, "Disclosure in Chapter 11 Reorganizations: The Pursuit of Consistency and Clarity," 70 Cornell L.Rev. 733, 735 (1985) (noting that the disclosure requirements of the debtor's reorganization provisions in § 1125 of Chapter 11 were designed to further policies of investor protection and simplicity); *Westland Oil Development Corporation v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 102 (S.D.Tex.1993). "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" *Oneida*, 848 F.2d at 417.

Given the critical importance of full and candid disclosure in Chapter 11 proceedings, it cannot be that the requirement of adequate disclosure evaporates because a reversion of property is obtained by dismissal, under § 349, as opposed to abandonment under § 554.[2] To hold otherwise

---

1. Although Kunica is correct that the cases cited by Defendants involve debtors who were granted a discharge, the common theme of these cases is that the debtor failed to disclose potential causes of action in its Schedules.

2. Kunica's assertion that, without exception, the effect of dismissal is the automatic revesting of the debtor's property is unavailing. First, courts have recognized a number of exceptions to the general revesting rule. *See Decker v. Voisenat*, 214 B.R. 219, 227 (Bankr. N.D.Cal.1997) (discussing various exceptions

to Section 349's "directive to restore pre-bankruptcy status quo"); *In re Davis*, 177 B.R. 907 (9th Cir.1995) ("intentionally wrongful conduct should not be excused merely because the underlying bankruptcy case has been dismissed"). Second, none of the cases cited by Kunica addresses the issue of the effect of nondisclosure upon § 349 in a bankruptcy case that was actually prosecuted. *See, e.g., France v. Lewis & Coulter, Inc. (In re Lewis & Coulter, Inc.)*, 159 B.R. 188 (Bankr. W.D.Pa.1993) (The bankruptcy case was nev-

would be to encourage a procedural end-run around the disclosure requirements, thereby rewarding parties that fail to comply with the directive of § 1125. Thus, a bankruptcy discharge is not a prerequisite to a finding that a debtor lacks standing to assert undisclosed claims post-bankruptcy.

A number of factors particular to the present action militate in favor of this conclusion. First, given that Sci–O–Tech obtained its dismissal after its case was fully administered and all of its assets scheduled, it arguably obtained the functional equivalent of a discharge.

Second, it is unclear whether Sci–O–Tech could have obtained a discharge. After Sci–O–Tech filed its Chapter 11 petition, its assets were sold to Lumex—free and clear of claims from Sci–O–Tech's creditors—except, according to Kunica, the Claims asserted in this case. The proceeds were then distributed to Sci–O–Tech's creditors, including Kunica. Defendants submit that because Sci–O–Tech proceeded through the bankruptcy as a liquidating debtor, it could not have obtained a discharge, as a matter of law, even if the bankruptcy case had not been dismissed.

11 U.S.C. § 727(a) provides that "[t]he court shall grant the debtor a discharge [under Chapter 7], unless (1) the debtor is not an individual." 11 U.S.C. § 1141(d)(3) provides that "[t]he confirmation of a plan [under Chapter 11] does not discharge a debtor if (A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge [because, *inter alia*, it is not an individual] . . . if the case were a case under Chapter 7 . . . ." If a debtor corporation is liquidated either under

Chapter 7 or pursuant to a Chapter 11 plan, no discharge is granted, *see* 11 U.S.C. §§ 727(a)(1), 1141(d)(3), and "there is no concern for a fresh start." *In re Prudential Lines, Inc.*, 107 B.R. 832, 839 (Bankr.S.D.N.Y.1989); *see also Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1508 (9th Cir.1995) (in a Chapter 11, "[l]iquidating corporations are automatically precluded from discharge").

Kunica submits that §§ 727(a) and 1141(d)(3) apply solely to liquidating debtors operating under a confirmed plan. Kunica maintains that Sci–O–Tech was not a liquidating debtor, but rather, that it sold off substantially all of its assets pursuant to 11 U.S.C. § 363. According to Kunica, "up until the day its bankruptcy case was dismissed, [Sci–O–Tech] was entitled to submit a plan of reorganization that, if confirmed, would have resulted in a discharge of its debts." (Plaintiff's Letter of April 16, 1999 at 3). However, Sci–O–Tech's sale of essentially all its assets combined with the Trustee's finding of Sci–O–Tech's lack of continuing operations, suggests that even if a plan were confirmed, Sci–O–Tech could not have obtained a discharge. *See* 11 U.S.C. § 1141(d)(3)(A) & (B).

Finally, Sci–O–Tech's alleged failure to disclose the existence and value of the Claims may have impacted on the bankruptcy court's decision to dismiss Sci–O–Tech's bankruptcy case. "The determining factor [in whether to convert or dismiss a Chapter 11 case] is not whether a party in interest has requested a conversion or dismissal, but rather whether dismissal or conversion will be in the best interest of creditors and the estate." *In re Klenosky*, 130 B.R. 132, 135 (E.D.N.Y. 1991). While it is uncertain that the bank-

er prosecuted, and was dismissed within 30 days of filing of the bankruptcy petition; no discussion of disclosure); *River Ranch, Inc. v. Outdoor Resorts River Ranch Inns & Cottages Condominium Ass'n (In re River Ranch, Inc.)*, 188 B.R. 693 (Bankr.M.D.Fla.1995) (The court retained jurisdiction after dismissal to

decide dispute between parties; no discussion of revesting under Section 349); *Kucera v. Bank of Brainard (In re Kucera)*, 123 B.R. 852 (Bankr.D.Neb.1990) (No disclosure issues; the court addressed the narrow issue regarding the effect of an after acquired property clause in a security agreement).

ruptcy court would have opted for conversion and liquidation under Chapter 7 instead of dismissal had it known about the Claims, such knowledge would have been germane to its determination. Without information about the Claims, the bankruptcy court could not make a fully informed determination that dismissal would be in "the best interests of creditors and the estate." *See* 11 U.S.C. § 1112(b).

Kunica maintains that since Sci–O–Tech never received a discharge of its debts, it remains vulnerable to actions by its creditors. In fact, since all of Sci–O–Tech's other assets were sold off, the only assets potentially vulnerable to creditors are the Claims. According to Kunica, Sci–O–Tech's creditors could have sought to recover the Claims from Sci–O–Tech, and "[s]ince neither the Committee nor any individual creditor of Sci–O–Tech ever argued for control of the Claims either during or after the bankruptcy proceeding, one can only conclude that none of Sci–O–Tech's creditors, other than the Plaintiff, was prepared to make the investment of time and money needed to pursue the Claims to a successful resolution." (Plaintiff's Brief at 13). This, however, assumes that the creditors were aware that the Claims existed. If, in fact, the Claims were not disclosed, it seems likely that the reason that the creditors did not pursue the Claims is because they did not know about them.

The question thus remains as to whether the Claims were adequately disclosed. Kunica avers that Sci–O–Tech fully and openly disclosed the Claims on numerous occasions to the bankruptcy court, the trustee and counsel for the Committee. It is unclear, however, on what Kunica is basing this assertion. It is uncontroverted that when Sci–O–Tech filed its Schedules on October 21, 1994, it made no reference to any claims against Defendants. In response to Question 20 of Schedule B of the Schedules, requiring disclosure of contingent and unliquidated claims of every nature and the estimated value of each, Sci–

O–Tech answered, under penalty of perjury, that it had no such claims. It would appear that Sci–O–Tech was aware of the Claims since in a pre-bankruptcy letter agreement executed by Sci–O–Tech on May 7, 1994, with an investor group who was going to run the operations of Sci–O–Tech and find a lender to take out Fremont's position, Kunica, as the sole shareholder of Sci–O–Tech, contractually required the investor group to "engage counsel selected by [the investor group] for the purpose of commencing legal action against St. Jean Financial, Walter Rogers and such other appropriate parties as said counsel may determine for breach of the April 4, 1994 agreement entered into between Sci–O–Tech and St. Jean." (Widell Decl.Exh. F). Accordingly, Sci–O–Tech did not meet its affirmative obligation under 11 U.S.C. § 521(1) to disclose to the bankruptcy court all of the assets that belonged to its bankruptcy estate.

The litigation disclosures in Sci–O–Tech's Amended Disclosure Statement were also inadequate. Sci–O–Tech merely indicated that it would retain certain unenumerated and unvalued causes of action against various unnamed third parties. These vague references to the Claims are insufficient, do not disclose the substance, nature and value of the Claims against the Defendants and do not override the contrary disclosures made in the Schedules that no claims exist. As noted by one court, "[g]eneral retention clauses are not convenient hiding places for debtors.... The creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional." *Westland,* 157 B.R. at 103.

Kunica contends that his attorneys "openly discussed and fully disclosed" potential claims during telephone conversations with counsel for the Committee. Such informal, oral disclosure is insufficient and is not a substitute for the mandatory filing of formal Schedules, as required by Bankruptcy Rule 1007(b). *See In re Fetner,* 218 B.R. 262 (Bankr.D.D.C.1997)

(holding that oral disclosure regarding property exemptions at a Section 341 meeting of creditors did not substitute for the mandatory disclosure under Bankruptcy Rule 1007(b)); *In re Moore*, 175 B.R. 13, 17 (Bankr.S.D.Ohio 1994) ("[t]he [bankruptcy] code does not authorize debtors, or their counsel, to simply present words on the wind at a § 341 meeting or in any other circumstance.").

Kunica also alleges that at a meeting on February 23, 1995, immediately preceding the bankruptcy court hearing regarding Sci–O–Tech's Original Disclosure Statement, "the claims were openly discussed and fully disclosed" to counsel for Sci–O–Tech's landlord, counsel for the Committee, and counsel for the Kunicas. At this meeting, Kunica agreed to drop his objection in exchange for an assignment of the Claims. As discussed above, informal, oral disclosures to counsel for the Committee is not valid and adequate disclosure to the creditors at large.[3] Moreover, there is no evidence that the agreement between Sci–O–Tech and Kunica was disclosed to the bankruptcy court or the U.S. Trustee at the hearing or any time thereafter in violation of Bankruptcy Rule 2002(a)(2) (requiring twenty days' notice to all creditors of the transfer of the debtor's property outside of the debtor's ordinary course of business) and Bankruptcy Rule 9019(a) (requiring twenty days' notice to all creditors of any compromise or settlement).

Kunica refers to paragraph 10 of Sci–O–Tech's motion for approval of the sale of its assets to Lumex (the "Sale Motion"). That paragraph provides that certain "claims enumerated in Schedule 1(c)(iv)" to the asset purchase agreement are excluded from the sale. Kunica concedes, however, that only the "front portion" of the Agreement ... "minus all schedules and exhibits" was attached to the Sale Motion. (Plaintiff's Brief at 6). Thus, the Agreement annexed to the Sale Motion that was allegedly served on Sci–O–Tech's creditors and presented to the bankruptcy court did not contain any of the schedules, including the Schedule 1(c)(iv). The draft Schedule 1(c)(iv) included with plaintiff's exhibits to its motion papers is dated May 25, 1995, nine days after the sale of assets was approved by the bankruptcy court. There is no evidence that the Schedule 1(c)(iv) was ever submitted to the bankruptcy court or seen by creditors.

These alleged disclosures, both individually and in the aggregate are insufficient as a matter of law. Accordingly, given Sci–O–Tech's failure to adequately disclose the existence and value of the Claims, it does not have standing to assert them here. As an assignee of Sci–O–Tech's Claims, Kunica has no greater rights or standing than would Sci–O–Tech. *See Gibraltar Petroleum Corp. v. Bank Sepah*, 526 F.Supp. 560, 561 (S.D.N.Y. 1981) (holding that assignee can have no greater rights to sue than its assignor). Thus, plaintiff's action must be dismissed.

### C. *Judicial Estoppel*

Defendants maintain that in addition to lacking standing, Kunica is judicially estopped from asserting the Claims. "Judicial estoppel lies when a party, after assuming a certain position in a legal proceeding, attempts to assume a contrary position." *In re Hoffman*, 99 B.R. 929, 935 (N.D.Iowa 1989). Judicial estoppel may be applied to bar a party from asserting a factual position in a given proceeding only when (1) that party advanced a clearly inconsistent position in a prior proceeding and (2) that inconsistent position was adopted by the court in some manner. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir.1997) (*citing*

---

**3.** It cannot be asserted that creditors at large had notice of the instant action via the telephone and courthouse conversations. Section 1109 of the Bankruptcy Code gives any and all parties in interest the right to be heard on any issue in an case under Chapter 11. A creditors committee is but one example of a party in interest enumerated in § 1109. *See* 11 U.S.C. § 1109(b).

*Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1037 (2d Cir.1993)).

Kunica contends that (1) judicial estoppel should not apply where a bankruptcy case was dismissed as opposed to a case where a debtor receives a discharge; (2) Sci–O–Tech did not take an inconsistent position in the bankruptcy proceeding because its Claims were fully disclosed; and (3) even if Sci–O–Tech did take an inconsistent position, "no position was adopted by the bankruptcy court." (Plaintiff's Brief at 18).

■■■ Plaintiffs first two arguments have been addressed above. It is worth noting, however, that the distinction between discharge and dismissal is particularly lacking in substance in the context of judicial estoppel. One of the rationales of this doctrine [of judicial estoppel] is to preclude the risk of inconsistent results in separate legal proceedings; its aim, in other words, is to "protect the integrity of the judicial process." *Maharaj v. Bankamerica Corp.,* 128 F.3d at 98 (*citing Bates,* 997 F.2d at 1037). In the bankruptcy context, "the rationale for these [estoppel] decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Kleban,* 918 F.Supp. at 104. Thus, a number of courts have invoked judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy. *See e.g., Payless Wholesale Distributors, Inc. v. Alberto Culver, Inc.,* 989 F.2d 570 (1st Cir.1993); *Kleban,* 918 F.Supp. at 104; *Oneida,* 848 F.2d at 419–20; *In re Galerie Des Monnaies of Geneva, Ltd.,* 55 B.R. 253, 259–60 (Bankr.

S.D.N.Y.1985), *aff'd,* 62 B.R. 224 (S.D.N.Y. 1986).

In *Louden v. Federal Land Bank of Louisville,* 106 B.R. 109 (Bankr.E.D.Ky. 1989), the debtors filed a Chapter 11 petition, omitting the claim against the defendant from their Schedules. As in the instant case, the bankruptcy case was dismissed approximately one year after the case was commenced, without a discharge of any debt. Shortly thereafter, the debtors filed a Chapter 7 proceeding, again omitting the claim against the defendant from their Schedules. During the course of the second bankruptcy case, the debtors commenced an action against the defendant. In response to the defendants motion for summary judgment, the court dismissed the debtors' claim in part because it was not properly scheduled in either of the bankruptcy cases.[4] At the time the court dismissed the debtor's claim, no determination of the debtor's dischargeability had been made in either case.

■■■ Sci–O–Tech's repeated failure to adequately disclose the Claims asserted here amounts to the assertion of inconsistent positions within the meaning of the judicial estoppel doctrine. However, the issue remains as to whether the dismissal of Sci–O–Tech's bankruptcy constitutes a judicial adoption of that inconsistent position by the bankruptcy court. Kunica maintains that by dismissing Sci–O–Tech's bankruptcy case, the bankruptcy court did not render a decision to Sci–O–Tech in any way, but instead simply returned all interested parties to the status quo as it existed prior to the filing of Sci–O–Tech's petition

4. Kunica submits that when the court in *Louden* invoked the doctrine of judicial estoppel it did so on the grounds that the debtors made no attempt to amend their bankruptcy schedules. In fact, the debtors' failure to amend was not dispositive, but rather, relevant to the debtor's claims that they had not known of the cause of action when their schedules were filed. The court in *Louden* held that "it appears to the court that the debtors have ignored this duty and have taken

it upon themselves to unilaterally determine what information is 'relevant' to their case. When we apply the principles of judicial estoppel to these facts, we believe that the debtors' failure to schedule their cause of action, and their subsequent prosecution of the same cause of action places them in a posture of fundamental inconsistency. Accordingly, we find that the plaintiffs are judicially estopped from asserting a cause of action against Land Bank." 106 B.R. at 112.

for relief. Kunica cites *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109 (2d Cir.1990) for the proposition that a voluntary dismissal pursuant to a stipulation does not constitute the requisite judicial endorsement needed to invoke judicial estoppel.[5] *Merrill Lynch*, however, is distinguishable from the instant case. In the present action, the bankruptcy court dismissed Sci–O–Tech's bankruptcy case based on a motion by the Trustee and Sci–O–Tech's stated position with respect to that motion that "no purpose would be served by Debtor remaining in bankruptcy." Had the bankruptcy court been aware of the Claims it might have ordered conversion and liquidation under Chapter 7 or found that Sci–O–Tech's Chapter 11 proceeding should have gone forward. Regardless of what the bankruptcy court might have done had it known of the Claims, it is arguable that the bankruptcy court adopted Sci–O–Tech's position concerning its assets. *Cf. Manhattan Avenue Dev. Corp. v. Meit*, 224 A.D.2d 191, 637 N.Y.S.2d 134 (1st Dep't 1996) ("While a settlement does not constitute a 'judicial endorsement' of either party's claims or theories and thus does not provide the prior success necessary for judicial estoppel, here, the stipulation was so-ordered by the court, which thereby inferentially endorsed plaintiff's then position concerning its assets, satisfying the 'prior success' element necessary for judicial estoppel"); *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 363 (3d Cir.1996) ("it may generally be reasonable to assume that a debtor that fails to disclose a substantial asset in bankruptcy proceedings gains an advantage").[6]

Accordingly, Kunica is judicially estopped from asserting the Claims.

## D. *Kunica is Not a Third Party Beneficiary*

Defendants aver that they are entitled to summary judgment against Kunica to the extent that Kunica asserts Counts I

---

**5.** Plaintiff also cites *Maharaj*, 128 F.3d 94, for the proposition that judicial estoppel cannot be asserted against a party unless that party obtained a judgment in a prior proceeding. However, the court in *Maharaj* held that in addition to asserting an inconsistent position in a prior proceeding, that inconsistent position must be "adopted by the court *in some manner, perhaps, for example, by obtaining a judgment.*" 128 F.3d at 98 (emphasis added). Similarly, the court in *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir.1997) held that estoppel applies "when a tribunal in a prior proceeding has accepted the claim at issue by rendering a favorable decision."

**6.** Kunica urges this Court to adopt the reasoning of the Third Circuit in *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355. The *Ryan* court held that the doctrine of judicial estoppel only applies to deliberate inconsistencies attributable to intentional wrongdoing and that intent may not be inferred solely from nondisclosure. The court stated that "[w]hile we by no means denigrate the importance of full disclosure or condone nondisclosure in bankruptcy proceedings, we are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the 'strong medicine' of judicial estoppel." 81 F.3d at 364.

Without reaching the issue of whether the invocation of judicial estoppel requires intentional wrongdoing, it appears that *Ryan* is distinguishable from the instant case. Sci–O–Tech's repeated failure to adequately disclose the Claims suggests that its nondisclosure was not "careless" or "inadvertent." Unlike in *Ryan*, there is evidence in the record "from which an inference of deliberate manipulation could be drawn." *Id.* At 363. Moreover, unlike *Ryan*, where plaintiff's failure to schedule certain claims was offset by plaintiff's failure to list certain corresponding claims against it as contingent liabilities, and therefore, the "balance of assets and liabilities before the court and creditors ... may have been unaffected by the failure to list the claims as assets", 81 F.3d at 363, Sci–O–Tech's lack of disclosure left a considerable disproportion between assets and liabilities. Further, the plaintiff in *Ryan* brought the undisclosed action while the bankruptcy case was still pending, pursuant to specific authorization from the bankruptcy court. In contrast, Sci–O–Tech did not receive authorization from the bankruptcy court to pursue the instant action. Thus, the facts in this case do not weigh against the inference that "a debtor who fails to disclose a substantial asset in a bankruptcy proceedings gains an advantage." *Id.*

and V of the Amended Complaint in his individual capacity as opposed to as an assignee of Sci–O–Tech. Defendants submit that Kunica cannot maintain, in an individual capacity, the claims of breach of written agreement and promissory estoppel alleged in Counts I and V as Count I alleges a written agreement for St. Jean to provide financing to Sci–O–Tech, and Count V alleges a promise by Rogers to provide financing for Sci–O–Tech, and that Sci–O–Tech relied on the alleged promise. Kunica concedes as much, but claims that he has standing to bring these counts as a third-party beneficiary of the agreement and alleged oral promises to Sci–O–Tech.

■ The test for third-party beneficiary status, as adopted by New York law from the Restatement (Second) of Contracts is as follows:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) that the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 988 F.Supp. 367, 371 (S.D.N.Y.1997) (*quoting* Restatement (Second) Contract § 302 (1979)); *see also Citicorp Int'l Trading Co. v. Western Oil & Refining Co.*, 771 F.Supp. 600, 604 (S.D.N.Y.1991); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 44, 495 N.Y.S.2d 1, 4–5, 485 N.E.2d 208 (1985). When determining the intentions of the contracting parties, the intention of the promisee governs. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 44, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985) ("Essential to status as an intended beneficiary

under [the Restatement (Second) of Contracts] is either that performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary or that the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.") (internal citations and quotation marks omitted).

■ Plaintiff bears the burden of pointing to admissible evidence in the record to demonstrate that he is the intended beneficiary of St. Jean's alleged agreement to provide Sci–O–Tech with financing. *See Fontaine v. Ryan*, 849 F.Supp. 190, 198 (S.D.N.Y.1993); *see also Strauss v. Belle Realty*, 98 A.D.2d 424, 426–27, 469 N.Y.S.2d 948, 950 (2d Dep't 1983), *aff'd*, 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985). Kunica has failed to provide any evidence of his third-party beneficiary status.

■ In support of his third-party beneficiary claim, Kunica merely alleges—without reference to any supporting affidavits or other admissible evidence—that "it is clear from the negotiations, including Rogers' promises to Sci–O–Tech, and the formation of the agreement itself that the parties intended to confer a benefit on the Plaintiff." (Plaintiff's Brief at 21–22). However, such unsupported and conclusory allegations are insufficient to support a third-party beneficiary claim. *See Banca Commerciale Italiana v. Northern Trust Int'l Banking Corp.*, 160 F.3d 90, 92 (2d Cir.1998) (to avoid summary judgment, plaintiff "must show the presence of a genuine issue by coming forward with evidence ... to establish the existence of a [pleaded] element at trial."); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) ("non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts ... or defeat the motion through 'mere speculation or conjecture' ") (citations omitted).

Moreover, given that Sci–O–Tech has the right to and (through Kunica) is simultaneously pursuing, on its own behalf, the same claims Kunica purports to bring individually, Kunica is barred from claiming third-party beneficiary status. As this Court has stated, in determining whether a promise intended to give the alleged third-party beneficiary the benefit of the promised performance, where, as here, "another besides the third-party may recover, beneficiary status is negated." *United Int'l Holdings, Inc.*, 988 F.Supp. at 373; *see also Maggio v. Leeward Ventures, Ltd.*, 939 F.Supp. 1020, 1030 (E.D.N.Y. 1996) ("we have emphasized when upholding the third party's right to enforce the contract that no one other than the third party can recover if the promisor breaches the contract"); *John Street Leasehold LLC v. The Federal Deposit Insurance Corp.*, No. 95 Civ. 10174, 1996 WL 737196, at *9 (S.D.N.Y. Dec. 24, 1996) (no third-party beneficiary status for plaintiff to agreement between FDIC and participating banks because "the banks were quite capable of suing if there was a breach of agreement"); *In re Houbigant, Inc.*, 914 F.Supp. 964, 985 (S.D.N.Y.1995).

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted.

Submit judgment on notice.

It is so ordered.