OPINION OF THE COURT
Barbara Howe, J.
Plaintiff, individually and as executrix of the estate of her deceased husband, commenced this action in November 1999 to recover damages for medical malpractice/negligence relating to the care of her deceased husband. Issue has been joined by all defendants, and the case has proceeded well into the discovery phase.
Pending now before me, inter alia, are motions by all defendants (1) to amend their answers to assert the defense that plaintiff lacks the capacity to sue, and (2) upon such amendment, for dismissal of this action. Plaintiff opposes each branch of defendants’ motions.
I
The relevant facts herein are not disputed and may be briefly stated. This action relates to the care and treatment of plaintiff’s decedent between November 12 and 17, 1997.[1] On May 12, 1997, some 184 days prior to the events which form the basis of this action, plaintiff and decedent had filed a voluntary chapter 11 bankruptcy petition in the Bankruptcy Court for the Western District of New York (case No. 97-12978K). That bankruptcy action is still pending, and no final order has ever been entered in it. Defendants first learned of the bankruptcy during discovery proceedings in 2000, and the instant motions to amend and dismiss subsequently ensued.
The gravamen of defendants’ motions is that plaintiffs medical malpractice/negligence claim, and her derivative consortium claim, are assets of the bankruptcy estate and that only the trustee in bankruptcy — or the debtor in possession, as such[2] —has the capacity to sue on the claims. Thus, because this ac *109 tion was brought by plaintiff in her individual capacity and as the personal representative of her deceased husband’s estate, rather than by the trustee of the bankruptcy estate and with the permission of the Bankruptcy Court, defendants urge that this action must be dismissed.
II
(A)
With respect to that branch of defendants’ motions seeking to amend their answers, it is axiomatic that “[l]eave to amend a pleading should be freely granted in the absence of prejudice to the nonmoving party where the amendment is not patently lacking in merit (see, Rinker v Oberoi, 275 AD2d 1000; Mathiesen v Meade, 168 AD2d 736; see also, Graham v Eagle Distrib. Co., 224 AD2d 921, lv dismissed 88 NY2d 962)” (Letterman v Reddington, 278 AD2d 868). Because I find that prejudice is not even alleged, let alone established (cf., State of New York v Super Value, 257 AD2d 708, 710), and because I also find that there is at least arguable merit to the proposed amendment (cf., Goldstein v St. John’s Episcopal Hosp., 267 AD2d 426, 427), I hereby grant each defendant’s motion to amend, and each answer shall now be deemed to include the affirmative defense of lack of legal capacity on plaintiff’s part to sue (cf, CPLR 3211 [a] [ 3]).
(B)
Turning to the second branch of defendants’ motions — that seeking dismissal of this action based upon defendants’ newly added affirmative defense — it appears that, as it has been framed and briefed by the parties, and so far as my own research discloses, not only is this lack of legal capacity issue a matter of first impression in this State but it has been addressed only infrequently in the federal system and there with divergent results.
In Dynamics Corp. v Marine Midland Bank (69 NY2d 191, 195), our Court of Appeals observed:
“Chapter XI of the Bankruptcy Act established a *110 statutory procedure for voluntary reorganizations, permitting a debtor — under court supervision — to negotiate and propose a plan for the composition of its unsecured debts and liabilities, meanwhile continuing to operate its business. Filing of a petition vests the bankruptcy court with exclusive jurisdiction of the debtor and its property, wherever located.
“Central to a proceeding under chapter XI is the requirement that a debtor file with the bankruptcy court comprehensive schedules of its assets (Bankruptcy Act § 7 [a] [8]; § 302, 11 USC § 25 [a] [8]; § 702 [1976]; former Bankruptcy rules 108, 109; former chapter XI rule 11-11; see also, 1A Collier, Bankruptcy ][][ 7.08-7.12, at 981-996.8 [14th ed]). The tangible and intangible property then owned by the debtor and set forth in the filed schedules represent the estate of the debtor available for distribution. The requirement of disclosure includes ‘[ujnliquidated claims of every nature, with their estimated value.’ (Official Form No. 1, Schedule B-3, Item [c] [305 US 717, 726]; Official Form No. 48 [368 US 1063, 1064].) The schedules can be amended at any time during the proceeding {see, 1A Collier, Bankruptcy 1] 7.12, at 996.7-996.8). Such disclosure allows the bankruptcy court and the creditors to determine whether the claims should be pursued on the creditors’ behalf’ (emphasis added).[3]
In this case, the crux of the dispute between the parties is whether the postpetition causes of action asserted in this case are assets of the bankruptcy estate. If they are, as defendants contend, plaintiff has no legal capacity to sue because those assets have never been listed in the bankruptcy petition and have neither been dealt with by the Bankruptcy Court nor abandoned by the trustee (cf., e.g., Hansen v Madani, 263 AD2d 881, 882; cf. also, e.g., Stein v United Artists Corp., 691 F2d 885, 890-893 [9th Cir]; Koch Ref. v Farmers Union Cent. Exch., 831 F2d 1339, 1346-1347, n 9 [7th Cir]; In re Owens v B. O. Acquisitions, 1997 US Dist LEXIS 5877, *9-10, 1997 WL 188127, *3-4).
With respect to the issue of abandonment, our Appellate Division has noted that “[a] Trustee cannot abandon an asset *111 unless notice of the abandonment is given to the creditors of the debtor and the creditors are provided with an opportunity to be heard (11 USC § 554). There can be no abandonment without notice (see, Sierra Switchboard Co. v Westinghouse Elec. Corp., 789 F2d 705)” (Robinson v Wiertel Constr., 185 AD2d 664, 665).
0)
As one treatise has put it, “§541 lies at the heart of the Bankruptcy Code * * * [it] creates an estate, an aggregation of the property belonging, owing or attributable to the debtor” (Bankruptcy Service § 29:3 [Lawyers ed]). Under 11 USC § 541, to the extent relevant here, property of the estate consists not only of “all legal or equitable interests of the debtor in property as of the commencement of the case” (§ 541 [a] [1]), but also of “[a]ny interest in property that the estate acquires after the commencement of the case” (§ 541 [a] [7]).
Section 541 (a) (1) of the Code “limits estate property to the debtor’s interests ‘as of the commencement of the case.’ This phrase places both temporal and qualitative limitations on the reach of the bankruptcy estate. In a temporal sense, it establishes a clear-cut date after which property acquired by the debtor will normally not become property of the bankruptcy estate. See generally 4 Collier on Bankruptcy 541.05.” (In re Hedged-Investments Assocs., 84 F3d 1281, 1285 [10th Cir].) Section 541 (a) (7), however, extends the reach of the bankruptcy estate to “[a]ny interest in property that the estate acquires after the commencement of the case” (emphasis added).
It is section 541 (a) (7) which defendants say requires that the postpetition tort claims in this action be included in the bankruptcy estate, relying, in part, on DeLarco v DeWitt (136 AD2d 406, 408 [“Upon the filing of a voluntary bankruptcy petition, all property which a debtor owns or subsequently acquires, including a cause of action, vests in the bankruptcy estate (see, 11 USC § 541 [a] [1], [7])”]). Plaintiff, on the other hand, contends that under section 541 (a), in a chapter 11 case, there is a distinction between property acquired postpetition by a “debtor” and property acquired postpetition by the bankruptcy “estate.” Based on that distinction, plaintiff urges that the claims in this action are not assets of the bankruptcy estate, relying on cases such as In re Winom Tool & Die (173 Bankr *112 613, 623-624 [“the very manner in which the bankruptcy estate is defined necessarily implies that the debtor retains a status separate from his or its status as debtor in possession * * * And unless specified otherwise in § 541(a), the chapter 7 or 11 debtor’s postpetition property acquisitions belong to the debtor, not the estate. See Patrick A. Casey, P.A. v Hochman, 963 F2d 1347, 1351 (10th Cir. 1992)”]).
(ii)
As to the after-acquired property provision, which was new with the enactment of the 1978 Bankruptcy Code, it has been opined that “[w]hile [§ 541 (a) (7)] includes property acquired by the estate after the commencement of the case, property of the estate generally does not include property acquired by the debtor after the commencement of the case” (3 Norton, Bankruptcy Law and Practice 2d § 51:1). Most of the federal cases construing section 541 (a) (7) tend to follow this view.
In re Doemling (127 Bankr 954), a 1991 decision of the United States District Court for the Western District of Pennsylvania, is the case most often cited for the proposition that postpetition personal injury claims of a debtor are not includable in a chapter 11 bankruptcy estate. In Doemling, the chapter 11 petition was filed in August 1988, and, five months later, Mrs. Doemling was seriously injured when a car struck her. The issue before the District Court was whether the Bankruptcy Court had properly found that any potential recovery from tort litigation arising out of Mrs. Doemling’s accident was not part of the bankruptcy estate. In affirming the Bankruptcy Court, the District Court reasoned as follows:
“The debtors, Eugene and Regina Doemling, have an identity independent of the bankruptcy estate that was created when the Doemlings filed their petition. The debtors and the estate are not interchangeable.”n1 The property at issue is a cause of action stemming from a tort inflicted upon the person of Mrs. Doemling. The Doemlings acquired whatever property interest they have in that cause of action in their personal capacities. The estate did not acquire this cause of action independent of the Doemlings. Any recovery in this cause of action would be to compensate the Doemlings for injuries to their persons. It would not compensate for any injury to the estate itself. Thus, section 541(a)(7) is inapplicable because, as the Bankruptcy Court *113 noted, it is limited to property acquired post-petition by the estate as opposed to property acquired by the debtors
The Doemling court also found that Segal v Rochelle (382 US 375 [1966]) supported its conclusions:
“Under Segal, property acquired by the debtor after the commencement of the bankruptcy proceeding will become property of the estate only if it is sufficiently rooted in the prebankruptcy past and is not entangled with the bankrupt’s ability to make an unencumbered fresh start. Segal v Rochelle, 382 U.S. at 380 * * * The Doemlings’ potential causes of action as a result of Mrs. Doemling’s accident are quite obviously not rooted in their prebankruptcy past. Indeed, these causes of action did not even exist until 5 months after the bankruptcy petition was filed. Cf. In re Bobroff, 766 F.2d 797, 803 (3d Cir. 1985) (holding that a debtor’s property interest in a defamation suit was not part of the bankruptcy estate where the actionable events did not occur until after the Chapter 7 bankruptcy petition was filed.) Thus, the Doemlings’ potential tort actions are not sufficiently rooted in their prebankruptcy past to justify assigning the causes of *114 action to the bankruptcy estate.” (In re Doemling, supra, at 957 [emphasis added].)[4]
Doemling’s ultimate holding — that postpetition personal injury claims are the property of the debtor in a chapter 11 proceeding rather than the property of the bankruptcy estate— has been followed by most of the courts that have since addressed the issue. (Cf., e.g., In re Durrett, 188 Bankr 413 [debt- or filed chapter 11 petition in November 1990, and was involved in airplane crash July 1991; held: potential proceeds of personal injury action arising from the crash are not includable in the bankruptcy estate]; Sundae v Scot, 529 NW2d 362 [Minn Ct App] [debtor filed chapter 11 petition in July 1990; on five occasions in 1991 and 1992, debtor was subject of public statements about him by Minneapolis city agency concerning real property owned, transferred or abandoned by him; and in 1993, debtor, a native of India, filed action for libel and slander, abuse of process, and racial discrimination, arising out of such public statements; held: postpetition causes of action for libel, slander and abuse of process are rooted in prepetition property ownership and, therefore, under Segal v Rochelle (382 US 375), are assets of the bankruptcy estate; however, postpetition racial discrimination claim is inherently personal to debtor, in the same way a personal injury claim would be (citing In re Doemling, supra), and, hence, is property of the debtor, not the bankruptcy estate]; cf. also, Patrick A. Casey, P. A. v Hochman, 963 F2d 1347, 1351 [10th Cir] [debtor filed chapter 11 petition in January 1982, and invented a medical device in early 1983, which was patented in May 1985, held: invention, patent, and proceeds from invention property of debtor, not bankruptcy estate, the Court of Appeals distinguishing between postpetition “property acquired by the debtors and property acquired by the estate,” and noting that 11 USC § 541 (a) (5) and (6), which provide for inclusion in the bankruptcy estate of certain *115 postpetition acquisitions of a debtor, “are actually exceptions from the general rule that postpetition acquisitions are property of the debtor” (emphasis added)].)
Matter of Griseuk (165 Bankr 956), however, declined to follow the Doemling approach. In Griseuk, the debtor filed for chapter 11 relief in May 1989. Subsequently, she acquired a claim for personal injuries against a corporation. The Florida Bankruptcy Court held that the postpetition personal injury claim was an asset of the bankruptcy estate, not an asset of the debtor, determining that, in a chapter 11 case, there is no distinction postpetition between property of the debtor and property of the estate:
“In a Chapter 11 case, the debtor and debtor-in-possession are one in the same * * * An individual, as debtor-in-possession, is the ‘estate’ in Chapter 11” (at 958).
Griseuk has not been followed by any case cited to me or which my own research has disclosed, but, instead, has been the subject of some criticism. (Cf., e.g., In re Winom Tool & Die, supra, at 624-625 [discussing and rejecting the analysis of Griseuk]', cf also, In re Durrett, supra [which, although commenting on the analysis in Griseuk, reached the same ultimate conclusion as Doemling and Winom, supra, on the particular facts presented].)
I conclude that Doemling is the better-reasoned, more analytically sound, approach, except insofar as Ryerson and Alvarez would modify Doemling's Segal analysis, and I adopt the Doemling reasoning (as so modified), and the result reached therein, as my reasoning and result here. Thus, I find that the instant postpetition medical malpractice/negligence claims, and the derivative consortium claim, are assets of the debtor— here, plaintiff individually and as the personal representative of her deceased husband’s estate — and are not assets of the chapter 11 bankruptcy estate. Furthermore, because these postpetition tort claims are not assets of the bankruptcy estate, it obviously was not necessary for the debtor to obtain the permission of the Bankruptcy Court to bring this tort action in State court.
(iii)
No New York case requires a different result. First, none of the cases addresses or decides the precise issues in this case— that is, whether, in a chapter 11 case, there is a postpetition distinction between the “debtor” and the “estate,” and whether, *116 in a chapter 11 case, a postpetition personal injury claim is the property of the “debtor,” not the “estate.” Second, none of the cases cited by defendants involves a chapter 11 postpetition personal injury claim.
For example, Dynamics Corp. v Marine Midland Bank (supra), on which defendants heavily rely, is a chapter 11 case where the plaintiff/debtor’s disputed, unlisted claims were for breach of agency and contract, fraud and negligent misrepresentation, and related matters. None of the claims involved a personal injury, and all of the claims had accrued prior to the filing of the chapter 11 petition. Thus, the facts of Dynamics make it inapposite to the instant issues.[5]
Similarly, in Goldstein v St. John's Episcopal Hosp. (supra), the plaintiff/debtor had failed to list a claim for medical malpractice arising out of January 1992 knee surgery when he filed his bankruptcy petition in October 1992. This failure led to dismissal of the malpractice action (which was commenced after the debtor had been discharged in the bankruptcy case) for lack of legal capacity to sue. (Cf. also, to the same effect, Hansen v Madani, supra [with a similar factual pattern as Goldstein}', Pinto v Ancona, 262 AD2d 472 [where action for prior medical malpractice was actually pending when plaintiffs filed for bankruptcy but had omitted claim from their petition]; Reynolds v Blue Cross, 210 AD2d 619 [with a similar fact pattern as Pinto].) Again, however, each of these cases involves a claim that had accrued prepetition, and each is thus inappropriate to the instant litigation.
Finally, DeLarco v DeWitt (supra), another case on which defendants heavily rely, also furnishes no support for dismissal here. In DeLarco, plaintiff had sued his former attorney in 1986 for legal malpractice arising, inter alia, out of the 1983 purchase of a piece of real property. Plaintiff’s former attorney had continued to represent plaintiff through August 30, 1985, and plaintiff had consulted other counsel earlier in August 1985 who had advised him that a claim for malpractice could be brought in connection with the 1983 real property transaction. In December 1984, plaintiff had filed a chapter 13 petition in bankruptcy, which was converted to a chapter 7 case in November 1985. Plaintiff received a bankruptcy discharge on *117 April 8, 1986, and, a few days later, instituted the malpractice action. The Appellate Division, Third Department, upheld the dismissal of the malpractice action for lack of plaintiffs’ legal capacity to sue, reasoning that,, all bases of the claimed legal malpractice having accrued between 1983 and August 1985, all should have been listed on the original bankruptcy petition (or on a possible amended schedule of assets).
In affirming trial term’s dismissal, the DeLarco court wrote that, “[u]pon the filing of a voluntary bankruptcy petition, all property which a debtor owns or subsequently acquires, including a cause of action, vests in the bankruptcy estate (see, 11 USC § 541 [a] [1], [7]; Schepmoes v Hilles, [122 AD2d 35, 36])” (supra, 136 AD2d, at 408 [emphasis added]). It is this “subsequently acquires” language which defendants contend is New York authority for inclusion in the bankruptcy estate of the medical malpractice/negligence and consortium claims in this case. I do not agree.
First, DeLarco was a chapter 13 bankruptcy case, and 11 USC § 1306 expressly provides that all “property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7 or 11” is includable in the bankruptcy estate. However, as noted in In re Doemling (supra), section 1306 applies only to chapter 13 proceedings, and finds no analogue in either chapter 11 or 7 cases. Thus, while the quoted language in DeLarco appropriately describes the scope of a bankruptcy estate in the chapter 13 case it was considering, that language is inapplicable to a chapter 11 case.
Second, even apart from the lack of symmetry between section 1306 assets and a chapter 11 case, the unlisted claims in DeLarco are either (a) prepetition claims which should have been listed originally pursuant to 11 USC § 541 (a) (1), or (b) postpetition claims which either had their roots in the debtor’s prepetition past or which arguably affected the administration of the bankruptcy estate itself. Regardless of how these claims might be characterized, they are clearly distinguishable from a personal injury claim accruing to a debtor postpetition in a chapter 11 case, such as exists here.
Accordingly, and for the reasons stated, I find that the malpractice/negligence, and derivative consortium, claims asserted by plaintiff in this case are not assets of the bankruptcy estate and did not have to be listed in the chapter 11 bankruptcy proceeding, and that plaintiff did not lack the legal *118 capacity to commence this action. Therefore, defendants’ motions to dismiss must be, and each hereby is, denied.

. Karl Niedermeier died on November 17, 1997.

. A debtor in possession has the same duties and powers as a trustee in bankruptcy. (Cf., 11 USC § 1107 [a].) “Although debtors in possession are the norm in a chapter 11 case and the appointment or selection of a trustee is to *109 be ordered by the court only for cause * * * the Bankruptcy Code casts the rights and duties of debtors in possession in terms of the rights and duties of trustees, making it unnecessary to refer to the debtor in possession in all of the sections of the Bankruptcy Code” (7 Collier, Bankruptcy K 1107.01 [15th ed rev]). Thus, I use the term “trustee” in this decision, in the same manner and to the same effect as in the Bankruptcy Code (11 USC [Code]).

. Although Dynamics was decided under the pre-1978 Bankruptcy Act, its general principles retain their validity under the current Code.

“n1 The distinction between the property of the individual debtor, as opposed to the property of the estate, finds further support in section 1306 of the Bankruptcy Code. 11 U.S.C. § 1306. Section 1306 applies only to bankruptcy proceedings of individuals and provides in pertinent part: ‘property of the estate includes, in addition to the property specified in section 541 of this title, ... all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 or 11 of this title, whichever occurs first.’ 11 U.S.C. § 1306(a)(1). Section 1306 thus implicitly acknowledges that the debtor is separate from the estate and may acquire property interests independent of the estate. It is this recognition of the independence of the debtor and the estate that necessitates section 1306 which makes property the debtor acquires after the bankruptcy property of the estate. Section 1306, however, is inapplicable to the present case as it was filed under Chapter 11. There is no counterpart to section 1306(a)(1) in Chapter 11.” (Id., at 955-956 [emphasis added].)

. The Doemling court further found that including in the bankruptcy estate any potential postpetition tort claim recovery by the Doemlings would “severely interfere with their ability to make a fresh start” (id., at 957). However, Doemling noted that the Ninth Circuit Court of Appeals, in In re Ryerson (739 F2d 1423 [1984]), had held that the post-Segal Code revisions had operated to eliminate the second Segal requirement that the after-acquired property not be entangled with the bankrupt’s ability to make an unencumbered fresh start. While Doemling expressed some doubt as to the Ryerson conclusion in this regard, In re Alvarez (224 F3d 1273, 1278-1279, nn 13, 14 [11th Cir 2000]) has applied Segal in the same manner as Ryerson-, and I believe that Ryerson and Alvarez state the correct rule to be followed in applying Segal.

. It is clear that, under the present Code, the unlisted claims in Dynamics should have been listed in the debtor’s petition pursuant to (now) 11 USC § 541 (a) (1). That being so, there would have been no occasion for our Court of Appeals to consider any theory relating to, or analogous to, current section 541 (a) (7), which, as has been noted supra, was new to the 1978 Code.