OPINION OF THE COURT
Eric N. Vitaliano, J.
This is a motion for summary judgment. The relevant facts *99 are not in dispute. The complaint alleges that plaintiff Christopher G. LaManna was injured as a result of an accident which occurred when the New York City bus he was driving was struck by a car owned by defendant Kim Panzo that was being operated by defendant Franklin Carrigan. Maria LaManna, the plaintiff’s wife, sues also for the loss of services.
A little more than a month before the accident, on November 10, 1998, the plaintiffs filed a petition in bankruptcy, under chapter 7 of the Bankruptcy Code (11 USC), in the Bankruptcy Court for the Eastern District of New York. A discharge was granted on February 24, 1999 and the bankruptcy proceeding terminated on March 10, 1999. There is no question that the plaintiffs’ claims against the defendants arising out of the accident were never listed as assets of the bankruptcy estate. This action was brought by a summons and complaint, dated November 2,1999, in Supreme Court and was transferred here, pursuant to CPLR 325 (d) on May 11, 2001.
The defendants seek dismissal on the ground that the claims the plaintiffs bring in this action were properly assets of the bankruptcy estate and that the plaintiffs no longer have legal capacity or standing to sue on them. Dismissal, they say, must be granted as a matter of law. The plaintiffs also see the matter in dispute as one of law and not fact. They argue that the claims brought in this action were not assets of the bankruptcy estate but property of the individual debtors. As such, they say, their property rights in the claims survive their bankruptcy proceeding and that they do have capacity and standing to bring their claims in this action.
The issue of law presented on this motion is by no means original. It would be expected under such circumstance that the doctrine of stare decisis should readily provide guidance. In this case, though, stare decisis blazes two trails. Regrettably, they lead in opposite directions.
Stare decisis is, of course, a cornerstone of our jurisprudential system. It is a refreshing reminder that justice flows from the rule of law rather than mutable edicts of an ever-changing cast of judicial characters. By its guidance, the doctrine of stare decisis provides a juridical structure that offers predictability, consistency and reliability. It serves the cause of judicial economy and fixes a star on which lawyers and their clients can chart a course of behavior. Normally, where there is a well-established precedent on point, a court is bound by stare decisis to follow it. (See Matter of Eckart, 39 NY2d 493, 498- *100 499 [1976]; see also People v Bing, 76 NY2d 331, 338 [1990].) Moreover, a judge sitting nisi prius in Civil Court is bound to follow valid decisions of the coordinate Appellate Term and Appellate Division, and, in their absence, of any Appellate Division, and, obviously, of the Court of Appeals. (See Mountain View Coach Lines v Storms, 102 AD2d 663, 664-665 [2d Dept 1984].)
On face, Schepmoes v Hilles (122 AD2d 35 [2d Dept 1986]) is one such decision. Schepmoes and its offspring (see e.g., Martinez v Desai, 273 AD2d 447 [2d Dept 2000]; Ervolino v Scappatura, 162 AD2d 654 [2d Dept 1990]; DeLarco v DeWitt, 136 AD2d 406 [3d Dept 1988]) deal foursquare with the failure of a debtor in bankruptcy to schedule as an asset of the bankruptcy estate a claim or cause of action that arises after the filing of the petition in bankruptcy but prior to the close of the bankruptcy proceeding. The rule of decision announced by the Second Department in Schepmoes is that postpetition causes of action, i.e., claims that accrue or arise during the pendency of a bankruptcy proceeding, are not the property of the debtor:
“The bankruptcy debtor’s title to causes of action vests in the trustee in bankruptcy (see, 11 USC § 541 [a] [1], [7]). Although the action at bar was not commenced until [after the bankruptcy had been terminated], it is clear * * * that the plaintiff’s causes of action * * * accrued well before the close of the bankruptcy proceedings. Where, as here, the trustee in bankruptcy did not know of the existence of the causes of action, which accrued prior to the close of the bankruptcy proceedings, and which were neither abandoned nor administered in the case, nor the subject of a court order, the causes of action remain property of the bankruptcy estate and the plaintiff loses the capacity to sue on his own behalf with respect thereto * * *. A bankruptcy debtor may not fail to schedule or withhold from his trustee all knowledge of certain property, thereby precluding the potential benefit of the property from accruing to his creditors, and then, after obtaining a release from his debts, assert title to the property * * *.
“Accordingly, the plaintiff lacks the legal capacity to bring this action, and the complaint must be dismissed * * (Schepmoes, supra at 36.)
Unquestionably, the chronology outlined in Schepmoes is the case here. The causes of action asserted here by the plaintiffs *101 against the defendants arose postpetition but before the termination of the chapter 7 bankruptcy proceeding they had brought. If the Schepmoes rule remains valid, the plaintiffs lack capacity to bring these claims and the motion of the defendants for dismissal must be granted.
Since Schepmoes has not been overruled by statute or appellate decision, there are very limited grounds to challenge its validity or otherwise avoid its reach. A well-traveled litigation path to avoid harmful, if not fatal, precedent is to distinguish the supposedly comparable cases factually. Even where the legal issue is identical, the doctrine of stare decisis is of little aid where the facts in the two actions are materially different.*
Schepmoes, however, cannot be factually distinguished from the instant action in any material way. There is, to be sure, a potentially significant difference between the two actions in that the instant one involves a bankruptcy proceeding commenced under chapter 7 of the Bankruptcy Code and Schepmoes one that began under chapter 13. The significance lies in the fact that the definitions of assets of a bankruptcy estate are different under the two chapters of the bankruptcy laws. Bankruptcy Code (11 USC) § 541 (a) (1) defines the assets of the bankruptcy estate in a chapter 7 proceeding to include “all legal or equitable interests of the debtor in property as of the commencement of the case.” (Emphasis supplied.) But, in harmony with the language of Schepmoes, the bankruptcy laws expand the compass of estate assets to include property acquired after petition and during the pendency of the proceeding if the proceeding is brought under chapter 13. (11 USC § 1306 [a]; see, e.g., In re Furgeson, 263 BR 28, 33-34 [ND NY *102 2001].) Any significance to this distinction evaporates on further review, nonetheless, because, though commenced as a chapter 13 case, the bankruptcy proceeding in Schepmoes was converted to one under chapter 7. Regardless the point during the pendency of the bankruptcy proceeding it could be said that the debtor acquired the property right in the cause of action the debtor later sought to enforce outside of bankruptcy, the expanded estate asset definition of section 1306 (a) of the Bankruptcy Code no longer applies if the chapter 13 case is converted to one under chapter 7. Upon conversion to chapter 7, the basic bankruptcy estate asset definition of section 541 (a) (1) applies retroactively. (See In re Bobroff, 766 F2d 797, 802-803 [3d Cir 1985].) Therefore, that Schepmoes began as a chapter 13 proceeding and was later converted to one under chapter 7 is of no moment when applying its rule of decision to a case involving a bankruptcy proceeding originally commenced and maintained throughout as a chapter 7 proceeding.
Since Schepmoes cannot be distinguished, it is appropriate to consider whether its rule of decision otherwise remains valid. Plainly, when applying a federal statute, such as the bankruptcy law, a state court is bound to apply the federal statute in the way that statute has been interpreted by the Supreme Court of the United States or, in the absence of such a decision, in accordance with any uniform rule established by the lower federal courts. (Flanagan v Prudential-Bache Sec., 67 NY2d 500, 505-506 [1986].)
“Inasmuch as the power of Congress * * * to establish uniform laws on the subject of bankruptcy is paramount and exclusive * * *, it necessarily follows that this court is bound by the interpretations of the Federal courts in relation to the scope and effect of * * * the Bankruptcy Act * * *. Where the national policy of bankruptcy law is specifically involved, as distinguished from a determination of rights and obligations under substantive law, Federal bankruptcy law governs * * (Lane v Marshall, 89 AD2d 579, 580 [2d Dept 1982], appeal dismissed 57 NY2d 955 [1982].)
Accordingly, when confronted by Second Department precedent that this court would ordinarily be bound to follow, if that precedent hinges upon an interpretation of federal law, such precedent is superseded and this court is bound to follow a contrary interpretation by the United States Supreme Court or uniform contrary precedent in the lower federal courts. (See *103 Heymach v Cardiac Pacemakers, 183 Misc 2d 584, 588 [Sup Ct, Suffolk County 1999].) That situation obtains here.
Since the time Schepmoes determined the rule that a debtor has no right, capacity or standing with regard to a post-petition cause of action where that cause of action does not arise out of assets of the bankruptcy estate and accrues during the pendency of bankruptcy proceedings, federal courts of appeals have been uniform in holding to the contrary, except where such proceedings are brought under chapter 13. The uniform federal rule is that any property acquired by the debtor postpetition and during the pendency of a bankruptcy proceeding commenced under chapters 7, 11 or 12 becomes the property of the debtor and not of the bankruptcy estate. (See, e.g., Vote v Vote, 276 F3d 1024 [8th Cir 2002]; Cadle Co. v Schlichtmann, 267 F3d 14 [1st Cir 2001]; Bell v Bell, 225 F3d 203 [2d Cir 2000]; Stamm v Morton, 222 F3d 216 [5th Cir 2000]; United Sates v Gold, 178 F3d 718 [4th Cir 1999]; Casey v Hochman, 963 F2d 1347 [10th Cir 1992]; see also Everett v Judson, 228 US 474, 479 [1913] [a principle of bankruptcy law is that the date of petition is used to determine the assets of the bankruptcy estate].) These cases make plain the high value that the Bankruptcy Code places on providing the debtor in a chapter 7, 11 or 12 proceeding to get a fresh start. That it is such an important policy is underscored by decisions holding that when a chapter 13 proceeding is converted to a chapter 7, as in Schepmoes, the chapter 7 definition of estate asset is to be followed to ensure that property acquired by the debtor postpetition remains the debtor’s property and available to the debtor to support his fresh start rather than become estate property for the benefit of creditors. (See In re Bobroff, supra at 803.) Schepmoes is dramatically out of step.
Finally, there cannot be even the hint of a quibble that the rights of a debtor to a cause of action at law should be treated the same as any other property right of the debtor. A cause of action is obviously a property right. If it were not, there would be no basis to even argue that it be included in the property of the bankruptcy estate in the first place. Tort claims that are in no way related to prepetition property of the debtor included in the bankruptcy estate become, when they arise postpetition, property of the debtor as a matter of federal bankruptcy law. To the point, in In re Doemling (127 BR 954 [WD Pa 1991]), the Federal District Court affirmed an order of the bankruptcy court that concluded tort actions arising during the pendency of a nonchapter 13 proceeding remain the property of the *104 debtor and do not become the property of the bankruptcy estate. In facts essentially identical to the case here, a debtor who had filed a voluntary chapter 11 proceeding was injured in a motor vehicle accident that occurred during the pendency of the bankruptcy proceeding. The creditors committee sought an order determining that any future recovery that the debtor and her spouse might obtain in the event of a successful tort action should be includable in the bankruptcy estate and available to the creditors. The court did not concur:
“[Plroperty acquired by the debtor after the commencement of the bankruptcy proceeding will become property of the estate only if it is sufficiently rooted in the prebankruptcy past and is not entangled with the bankrupt’s ability to make an unencumbered fresh start * * *. The Doemlings’ potential causes of action as a result of Mrs. Doemling’s accident are quite obviously not rooted in their pre-bankruptcy past. Indeed, these causes of action did not even exist until 5 months after the bankruptcy petition was filed * * *. Thus, the Doemlings’ potential tort actions are not sufficiently rooted in their prebankruptcy past to justify assigning the causes of action to the bankruptcy estate.” (Id. at 957.)
Uniform interpretation of the Bankruptcy Code by the federal courts, therefore, makes unmistakable that the causes of action the plaintiffs assert here are their property and are not the property of their bankruptcy estate. As a matter of federal law, they retain full rights over these claims and have the capacity and standing to pursue them in this court. To the extent that Schepmoes, and the cases following it, are to the contrary, their rule of decision has been superseded by the uniform interpretation of the Bankruptcy Code by federal courts, is no longer valid and should not be followed except where the underlying proceeding in bankruptcy is one brought, from commencement to termination, under chapter 13. The contention of the defendants that the plaintiffs lack standing to bring their claims is without merit. Accordingly, the defendants’ motion for summary judgment dismissing the complaint is denied in its entirety.

 This was the tact taken in Niedermeier v St. Joseph Hosp. (188 Misc 2d 107 [Sup Ct, Erie County 2001]), which sought to distinguish DeLarco (supra). The court in Niedermeier held that the plaintiff there did have capacity to sue on a medical malpractice claim that arose after the plaintiff and her decedent had filed a voluntary chapter 11 bankruptcy petition but while the bankruptcy proceeding was still pending. The court held, essentially, that the language in DeLarco that claims rising postpetition but prior to the termination of the bankruptcy proceeding belonged to the bankruptcy estate rather than the debtor was dicta rather than a rule of decision. The Niedermeier court reasoned that on the facts presented in DeLarco interpretations of the bankruptcy law by federal courts required the property acquired post-petition by the DeLarco debtor to be scheduled as an asset of the bankruptcy estate. The DeLarco Court, therefore, did not have to decide the larger question as to whether in every bankruptcy proceeding any claim arising postpetition and during the pendency of the bankruptcy proceeding belonged to the bankruptcy estate rather than to the debtor personally. Niedermeier, however, made no attempt to distinguish Schepmoes or any other decision in the line of cases following it that were factually different from DeLarco.