OPINION OF THE COURT
Eric N. Vitaliano, J.
*243 The matter submitted for decision presents squarely a question novel to New York state courts: where a cause of action accrues either before or during the pendency of a bankruptcy proceeding brought by the plaintiff, does the cause of action survive bankruptcy and the plaintiff maintain legal capacity to sue on it where that underlying cause of action is neither asserted as an asset of the debtor’s estate nor the claim administered in the bankruptcy proceeding but the bankruptcy proceeding is administratively dismissed summarily by the Bankruptcy Court without the entry of a discharge or plan of reorganization? The question presented must be answered in the negative.
The motion of the defendant in action No. 1, MetLife Auto and Home Insurance Company (the insurer), to dismiss pursuant to CPLR 3211 (a) has been submitted to the court by the parties as a matter of law for the facts essential to a resolution of this motion are not disputed.[1] Briefly, as the reference to bankruptcy proceedings implicates, the claims advanced by the plaintiffs here arise in the context of their serious financial difficulties. In fact, one way or another, all of the litigations before this court and the Bankruptcy Court relate to the foreclosure and sale of the plaintiffs’ home. The first round of bankruptcy filings was designed to stave off that calamity. The effort failed. On April 8, 1999, Better Homes Depot, Inc., the defendant in action No. 2, purchased the plaintiffs’ Staten Island residence at a foreclosure sale. Presumably by way of a writ of assistance, the plaintiffs were actually evicted from their residence on December 16, 1999. Access to the premises at the sufferance of Better Homes was allowed thereafter on a periodic basis to enable the plaintiffs to remove any personal belongings. The plaintiffs contend in action No. 2 that Better Homes agreed to safeguard the balance of those belongings at their former residence. At some point between February 26, 2000 and March 4, 2000, plaintiffs further contend, all of their remaining items of personal property were, as a result of burglary or some other unauthorized act, removed from the locked and secured premises. The loss was discovered by the plaintiffs on March 6, 2000. In action No. 1, the plaintiffs allege that the defendant insurer breached the homeowner’s insurance policy that it had issued to the plaintiffs by refusing to pay their $300,000 claim *244 for the loss of that personal property, which the plaintiffs allege was still covered by the policy. Better Homes is sued in action No. 2 for conversion of the plaintiffs’ personal belongings and, alternatively, in negligence for failing to safeguard them at the premises.
The uncontroverted litigation history of the plaintiffs’ troubles is critical. In a less than five-year period, beginning September 11, 1997 and ending March 20, 2002, nine separate bankruptcy petitions under either chapter 7 or chapter 13 were filed by the plaintiffs in what can only be labeled as, in charity, an abuse of the bankruptcy system. Each petition was summarily dismissed by orders of the Bankruptcy Court for the Eastern District of New York. The plaintiffs do not deny that each of them filed bankruptcy petitions and that all of their petitions were dismissed as the insurer alleges. Indeed, the plaintiffs fasten to the dismissals. They argue, instead, that their “bankruptcy filings were dismissed as a result of the plaintiffs’ failure to pursue any type of relief in bankruptcy. The filings were a nullity and of no legal consequence.” (Affirmation in opposition of Peter M. McCabe, Esq. at 2.) Quite to the contrary, while the parade of petitions may have been of no legal consequence in the Bankruptcy Court, they are of consequence here.
The plaintiffs’ string of abusive bankruptcy filings bracket in time the conduct which gives rise to the claims asserted against the defendants both in action No. 1 and action No. 2. To be specific, a chapter 13 proceeding was brought prior to and was pending at the time of the alleged theft and subsequent claim denial by the insurer. Three more chapter 13 petitions and a chapter 7 petition were filed after the alleged underlying actionable conduct of the defendants in 2000. Four of them were pending after the action against the insurer had been brought in this court. One of the chapter 13 proceedings was pending after both actions were commenced in this court. In this context, it is immaterial the chapter of the Bankruptcy Code or the number of petitions under which the relief was sought by the debtor plaintiffs. Assuming its bona fides, the chapter 13 proceeding already pending on March 6, 2000, which was not terminated until March 25, 2002, could have effectively divested the plaintiffs of their capacity to sue with respect to any undisclosed cause of action which had accrued prior to that filing or during the pendency of the proceeding. (See LaManna v Carrigan, 196 Misc 2d 98, 104 [Civ Ct, Richmond County 2003].) The *245 chapter 7 petition filed on October 26, 2000 would also capture these claims as assets of the debtors’ estate and strip the plaintiffs of their capacity to sue on them. (See Santori v Met Life, 11 AD3d 597 [2d Dept 2004].)[2] Under any and all of these legal precedents, the claims alleged in the complaints here should have been listed as assets of the debtors and be administered or dealt with in any one of several bankruptcy proceedings they had brought. Failing that, as the insurer asserts on its motion, the plaintiffs should be out of court now.
To this, the plaintiffs offer their demurrer. It rests on section 349 of the Bankruptcy Code:
“(b) Unless the [bankruptcy] court, for cause, orders otherwise, a dismissal of a [bankruptcy] case . . .
“(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title” (11 USC § 349 [b] [3]; see generally 2A Bankruptcy Service § 17:257 [Lawyers ed 2004]).
At the core, the plaintiffs argue, and this fact too is uncontested, that since there was no administration of any of the plaintiffs’ assets, no discharge or restructuring of any of their debts and no order of the Bankruptcy Court otherwise, the administrative dismissal of each and every one of their bankruptcy proceedings revests all of their property, including the causes of action asserted here, in the plaintiffs and restores their legal capacity to sue on them.
This court is unaware of any New York state decision which settles the impact of the revesting provisions of a Bankruptcy Code § 349 dismissal on our jurisprudence which holds *246 debtor plaintiffs stripped of their legal capacity or standing to sue on causes of action which were or could have been listed as assets of the debtor and administered or otherwise dealt with as part of the debtor’s bankruptcy estate. A Federal District Court sitting in an action removed from Supreme Court, New York County, on diversity grounds has, however, considered this very issue. Its decision, Kunica v St. Jean Fin., Inc. (233 BR 46 [SD NY 1999]), is insightful and the logic compelling. Applying the Bankruptcy Code and principles of judicial estoppel akin to those underlying the rationale of Santori and other New York cases finding the former debtor in bankruptcy without capacity to sue, Kunica holds that parties in the situation of the plaintiffs here are similarly without authority to sue on claims unscheduled in bankruptcy despite a dismissal order under section 349 which contains no Bankruptcy Court direction that such assets not revest in the debtor. Kunica’s guidance should and will be followed by this court.
Although the facts in Kunica are strikingly different from those in the two cases at bar, the controlling principles of law should not be. There, the plaintiff, Richard Kunica, alleged that he was the assignee of certain claims or causes of action belonging to a business entity, Sci-O-Tech. Sci-O-Tech had been wholly owned by a company controlled and led by Kunica as its president. On September 14, 1994, Sci-O-Tech filed a voluntary chapter 11 petition in the Bankruptcy Court for the Eastern District of Pennsylvania. A year later, on September 27, 1995, upon the joint motion of the trustee and the debtor, the Sci-O-Tech bankruptcy proceeding was dismissed. The assignment of the claims to Kunica came five months later on February 27, 1996. That was followed, on March 27, 1997, by Kunica’s commencement of an action on one of the assigned claims in Supreme Court, New York County, which became the case removed to the Southern District. The defendants subsequently moved for summary judgment on the ground that Kunica, as a result of judicial estoppel, lacked standing to sue. The asserted judicial estoppel rested on the fact that Kunica’s assignor, Sci-O-Tech, had failed to disclose the existence and the value of the now assigned claim during pendency of its chapter 11 case. Conceding that Sci-O-Tech’s failure to disclose and schedule in its bankruptcy proceeding the claim now sued upon would deprive him of standing and legal capacity to assert it postbankruptcy if Sci-O-Tech had been granted a discharge or if a plan of reorganization had been approved by the Bankruptcy Court, Kunica *247 rested his opposition to the summary judgment motion front and center on section 349 of the Bankruptcy Code. The Bankruptcy Court, he argued, had simply dismissed the chapter 11 proceeding without making any further order and, therefore, Sci-O-Tech should have been automatically restored to the status it had prior to the filing of the chapter 11 petition. As a result, Kunica argued further, full right and title to all of Sci-O-Tech’s property, including claims and causes of action like the one being advanced in the removed action, belonged without any strings attached to Sci-O-Tech and were, consequently, properly assignable to him. The District Court rebuffed the plaintiffs feint. (Id. at 53.)
At its foundation, the decision in Kunica viewed any “safe harbor” that section 349 might afford the debtor or its postproceeding assignees against a lack of standing argument to be an unjust reward for the debtor’s failure to make proper disclosure in the dismissed bankruptcy proceeding. The court held (at 54): “The parties do not cite and independent research has not revealed any authority dealing with the effect of dismissal on non-disclosed claims. However, the key issue in this case is not dismissal nor discharge, but disclosure.”
Section 521 of the Bankruptcy Code outlines a nonexhaustive list of the debtor’s duties in a bankruptcy case. Pursuant to section 521 (1), a debtor is required to “file a . . . schedule of assets and liabilities . . . and a statement of the debtor’s financial affairs” (11 USC § 521 [1]).
“Given the critical importance of full and candid disclosure in chapter 11 proceedings, it cannot be that the requirement of adequate disclosure evaporates because a reversion of property is obtained by dismissal, under § 349 ... To hold otherwise would be to encourage a procedural end-run around the disclosure requirements, thereby rewarding parties that fail to comply with the directive of section 1125. Thus, a bankruptcy discharge is not a prerequisite to a finding that a debtor lacks standing to assert undisclosed claims postbankruptcy.” (236 BR at 54-55.)
None of the nine bankruptcy proceedings commenced by the plaintiffs was brought under chapter 11 so the provisions of section 1125 (a) of the Bankruptcy Code mandating that the debtor provide “adequate information” was not applicable to them. It is a distinction without significance. “[T]he integrity of the bankruptcy system depends on full and honest disclosure by *248 debtors of all of their assets.” (Rosenshein v Kleban, 918 F Supp 98, 104 [SD NY 1996].) That is true whether a proceeding is brought under chapter 11, chapter 7 or chapter 13. (See Hamilton v State Farm Fire & Cas. Co., 270 F3d 778, 785 [9th Cir 2001]; In re Coastal Plains, Inc., 179 F3d 197, 207-208 [5th Cir 1999], cert denied sub nom. Mims v Browning Mfg., 528 US 1117 [2000].) Obviously, without full disclosure of all of a debtor’s assets, including claims and causes of action against other parties, neither the trustee, nor the creditors, nor the Bankruptcy Court itself can make a rational decision as to what course in bankruptcy is in the best interests of the debtor or the creditors.
Here, the debtor plaintiffs are quite conversant with the bankruptcy system. Indeed, the nine separate petitions filed by them in less than five years show that they were sufficiently conversant with the bankruptcy system to abuse it. More importantly, without full disclosure of their assets as required by section 521 (1) of the Bankruptcy Code, the debtor plaintiffs deprived the Bankruptcy Court of information critical to any decision to grant a dismissal under section 349 much less one to dismiss without a further order regarding the revesting of property rights that were totally undisclosed and unknown to the court. Further, in any event, to avoid inconsistent judicial determinations, the plaintiffs here should be judicially estopped from professing rights they effectively denied existed in their chapter 13 proceeding pending at the time the causes of action asserted here arose and subsequently denied existed in their four separate bankruptcy filings that followed.
Accordingly, with due deference to the principal element of full disclosure by the debtor that is inherent in every bankruptcy proceeding, the rule in Kunica should not only be adopted by New York state courts but extended to chapter 7 and chapter 13 debtors as well. New York courts have spoken clearly and forcefully that a debtor who fails to disclose a cause of action in bankruptcy, when required by the Bankruptcy Code, regardless of the chapter under which the proceeding is brought, is barred following discharge or other substantive termination of the petition by the Bankruptcy Court from asserting capacity and standing to sue on any such cause of action not appropriately disclosed. (See Santori, supra; Schepmoes, supra; LaManna, supra.) This court now holds that the same rule obtains where dismissal is ordered under section 349 of the Bankruptcy Code. In the five relevant bankruptcy proceedings *249 commenced by the plaintiffs, they led the Bankruptcy Court to believe that the claim they seek to assert against the moving defendant did not exist. They should not be heard to call a new tune now. The motion of defendant MetLife Auto and Home Insurance Company for dismissal is granted.
To be sure, the plaintiffs’ lack of capacity to sue is fatal not only to the claim brought against the insurer but those brought against Better Homes, the defendant in action No. 2, as well. Even though Better Homes has not moved for summary judgment and the order consolidating the two actions was for purposes of joint trial only, given the commonality of the issue and the fundamental nature of the plaintiffs’ lack of capacity to sue on the claims brought against either defendant, it is appropriate in the interests of justice and judicial economy that the court exercise the authority granted by CPLR 3212 (b) to search the record on what is, in any case, an issue of law and award summary judgment to the nonmoving defendant, Better Homes Depot, Inc. (see Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106 [1984]; Serf Realty Co. v State of New York, 5 AD3d 584 [2d Dept 2004]; Dormena v Wallace, 282 AD2d 425 [2d Dept 2001]).
For all the foregoing reasons, it is ordered that, in action No. 1, the motion of defendant MetLife Auto and Home Insurance Company for an order pursuant to CPLR 3211 (a) (3) dismissing the action on the ground that the plaintiffs lack legal capacity to sue is in all respects granted; and it is further ordered that, in action No. 2, upon searching the record pursuant to CPLR 3212 (b), summary judgment dismissing the action is granted to defendant Better Homes Depot, Inc.

. There are two branches to the insurer’s motion. It moves under paragraph (3) on the ground that the plaintiffs lack legal capacity to sue and also under paragraph (7) on the ground that the complaint fails to state a cause of action. With respect to the latter ground, there are disputed issues of fact and relief to the defendant on this theory would be unavailing.

. Both sides cite the seminal case of Schepmoes v Hilles (122 AD2d 35 [2d Dept 1986]) for the proposition that the failure of the debtor to list causes of action accruing prior to the time of the commencement or during the pendency of the bankruptcy proceeding as assets of the estate deprive the debtor plaintiff of legal capacity or standing to sue on them later. It should be noted, however, that the holding of Schepmoes requiring the scheduling of postpetition causes of action as assets of the bankruptcy estate has been, at the least, limited by Santori to chapter 13 cases only. (But see Giovinco v Goldman, 276 AD2d 469 [2d Dept 2000].) Citing a line of federal decisions holding that a debtor has a coequal right with the trustee to sue where a chapter 13 proceeding is still pending, Giovinco acknowledges that, in such situation, the debtor maintains capacity to bring suit in state court. (See Matter of Miller [Berti], 1 AD3d 885 [4th Dept 2003]; cf. Cruz v Montgomery, 5 Misc 3d 1020[A], 2004 NY Slip Op 51464[U], *2 n [Sup Ct, NY County 2004].) Giovinco is not controlling here because the claims made were never disclosed and never dealt with in any of the chapter 13 proceedings. Moreover, the failure of the debtor plaintiffs to schedule the claims in the chapter 7 proceeding filed on October 26, 2000 is fatal on its own.