■ B.N. REALTY ASSOCIATES, Appellant, v BEN LICHTENSTEIN, Respondent, et al., Defendant. [801 NYS2d 271]—

Order, Supreme Court, Bronx County (Howard R. Silver, J.), entered November 3, 2003, which, insofar as appealed from and not academic, denied without prejudice plaintiff's motion for summary judgment holding defendant-respondent liable to plaintiff in the principal amount of $42,544.32 and dismissing defendant-respondent's counterclaims, unanimously modified, on the law, to grant plaintiff partial summary judgment dismissing defendant-respondent's tenth affirmative defense (laches), and otherwise affirmed, without costs. So much of the appeal from the aforesaid order as seeks review of the direction to hold a traverse hearing unanimously dismissed, without costs, as academic. Order, same court and Justice, entered February 24, 2004, which, after a traverse hearing, dismissed the complaint for lack of personal jurisdiction, unanimously reversed, on the law, without costs, the complaint reinstated, and defendant-respondent's first affirmative defense (lack of personal jurisdiction) dismissed.

Plaintiff B.N. Realty Associates (BNRA), a landlord, commenced this action in 1994 to recover $42,544.32 in rent and/or use and occupancy that defendant-respondent Ben Lichtenstein and his former wife (the nonappearing codefendant) allegedly owe for their occupancy of an apartment in BNRA's building from December 1, 1988 through July 1, 1993. In his answer to the complaint, Lichtenstein asserted 17 affirmative defenses and six counterclaims. The first affirmative defense set forth in Lichtenstein's answer was lack of personal jurisdiction, based on the claim that Lichtenstein had not been properly served with process.

For about four years after the service of Lichtenstein's answer, the action remained dormant. Then, in April 1998, BNRA

changed its counsel and served Lichtenstein with a reply to the counterclaims and discovery demands. In May 1998, the court issued an order requiring Lichtenstein to accept service of the reply and to respond to BNRA's discovery demands, based on findings that Lichtenstein had never taken any steps to prosecute the counterclaims and was not prejudiced by the late service of the reply. The May 1998 order was not appealed.

In August 1998, Lichtenstein filed a voluntary chapter 7 bankruptcy petition, thereby automatically staying proceedings in this action. Lichtenstein's petition acknowledged BNRA's claim against him for back rent for the period at issue in this action, and did not indicate that such claim was either "contingent," "unliquidated," or "disputed." Although the petition did not disclose any counterclaims, setoffs or affirmative defenses that Lichtenstein allegedly had against BNRA, it did disclose the pendency of the instant action. In December 1999, BNRA commenced an adversary proceeding in the bankruptcy case. BNRA's complaint in the adversary proceeding objected to Lichtenstein's receiving a discharge in bankruptcy on the ground that Lichtenstein's allegedly fraudulent conduct constituted a bar to his discharge under 11 USC § 727 (a) (2), (3) and (4).

In September 2000, Lichtenstein moved to dismiss his own bankruptcy petition. In response, BNRA cross-moved for, among other relief, summary judgment on its complaint in the adversary proceeding. By order dated February 14, 2002, the Bankruptcy Court denied Lichtenstein's motion, granted BNRA's cross motion for summary judgment denying Lichtenstein a discharge, lifted the automatic stay of litigation against Lichtenstein, and awarded BNRA attorneys' fees (subsequently assessed against Lichtenstein in the amount of $25,000). In effect, the Bankruptcy Court dismissed Lichtenstein's petition.[1]

In April 2003, BNRA moved to restore this action to Supreme Court's calendar, and for summary judgment holding Lichtenstein liable to it for the damages sought in the complaint, plus prejudgment interest, costs and attorneys' fees. BNRA sought summary judgment on the ground that Lichtenstein's failure to list any alleged counterclaims, setoffs or affirmative defenses against BNRA in his bankruptcy petition deprived him of standing to assert such matters in this action. Lichtenstein, in addition to opposing the motion, cross-moved to dismiss the complaint on the ground of laches or, in the alternative, for a

---

**1.** Although the Bankruptcy Court did not denominate its action a dismissal of Lichtenstein's bankruptcy case, the parties do not dispute that this was the effect of the court's order.

traverse hearing to determine whether BNRA had effected valid service of the summons and complaint (as previously noted, a defense of improper service of process had been raised in Lichtenstein's answer).

In the order entered November 3, 2003, Supreme Court granted BNRA's motion insofar as it sought to restore the action to the calendar, but denied the motion insofar as it sought summary judgment in BNRA's favor. The court denied Lichtenstein's cross motion to dismiss the complaint, but did order a traverse hearing to resolve the jurisdictional issue. When the traverse hearing was convened, BNRA was unable to produce a process server to testify. In the order entered February 24, 2004, the court dismissed the complaint on the ground that, at the traverse hearing, BNRA had failed to prove valid service of process. BNRA appeals from both of these orders.

We first address the appeal from the February 2004 order dismissing the complaint for want of proof of valid service of process, since the substantive issues raised by the appeal from the November 2003 order would be academic if Lichtenstein's jurisdictional defense had merit. The record establishes, however, that, contrary to the motion court's view, Lichtenstein has waived his jurisdictional defense as a matter of law.

During the pendency of this action (and more than a year before the filing of the bankruptcy petition), the Legislature (by L 1996, ch 501, § 1) amended CPLR 3211 (e) to provide that "an objection that the summons and complaint . . . was not properly served [ ] is waived if, having raised such an objection in a pleading, the objecting party does not move for judgment on that ground within sixty days after serving the pleading, unless the court extends the time upon the ground of undue hardship." Where, as here, the action was pending at the time the amendment of CPLR 3211 (e) was enacted, the 60-day period is deemed to run from the effective date of the amendment, which was January 1, 1997 (*see Matter of Farkas v Chase Manhattan Bank*, 290 AD2d 253 [2002]; *Wade v Byung Yang Kim*, 250 AD2d 323 [1998]; *Fleet Bank, N.A. v Riese*, 247 AD2d 276 [1998]). It is undisputed that Lichtenstein failed to move for judgment based on his objection to service of process (asserted in the first affirmative defense of his answer) within 60 days after January 1, 1997. Further, Lichtenstein has never made any showing of "undue hardship" that would warrant extending his time to make such a motion. Accordingly, under present CPLR 3211 (e), Lichtenstein has waived his service objection and the jurisdictional defense based thereon (*see* Siegel, NY Prac § 266, at 448; § 274, at 456 [4th ed]). We therefore reverse the order entered

February 24, 2004, reinstate the complaint, and dismiss Lichtenstein's first affirmative defense of lack of personal jurisdiction.

We now turn to BNRA's appeal from the November 2003 order, which, insofar as appealed from, denied BNRA's motion for summary judgment and directed that a traverse hearing be held to determine the merits of Lichtenstein's jurisdictional defense. Initially, we note that the portion of the November 2003 order concerning the traverse hearing is moot, since the traverse hearing has already been held, and the jurisdictional issue was determined by the subsequent February 2004 order, which we have addressed in the immediately preceding paragraph. Accordingly, we dismiss as academic the portion of BNRA's appeal from the November 2003 order that seeks review of that order's direction to hold a traverse hearing.

At this point, we reach the question of whether the motion court, in its November 2003 order, correctly denied BNRA's motion for summary judgment holding Lichtenstein liable for the principal amount sought in the complaint, and dismissing his counterclaims. As previously indicated, the basis on which BNRA moved for summary judgment was Lichtenstein's omission from his now-dismissed bankruptcy petition of the counterclaims, offsets and defenses he now asserts against BNRA in this action. Citing *Kunica v St. Jean Fin., Inc.* (233 BR 46 [SD NY 1999], *amended on other grounds* 63 F Supp 2d 342 [SD NY 1999]), BNRA argues that Lichtenstein's omission from his bankruptcy petition of his present counterclaims, offsets and defenses deprives him of standing to continue to assert such matters in this action now that the bankruptcy proceeding has been dismissed. We disagree.

The Bankruptcy Code provides, in relevant part, that the termination of a bankruptcy case by dismissal (rather than by discharge) "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case" (11 USC § 349 [b] [3]). Although this provision, on its face, would appear to mean that the dismissal of Lichtenstein's bankruptcy case restored his standing to assert his alleged counterclaims, defenses and offsets in this action, BNRA argues that section 349 (b) (3) does not apply to such "property" because Lichtenstein failed to disclose such matters in his bankruptcy case. In *Kunica,* the case on which BNRA relies, the court held that, notwithstanding section 349 (b) (3), the dismissal of a bankruptcy case did not revest certain litigation claims in the debtor because the debtor had not disclosed such claims in the bankruptcy proceeding. Therefore,

the *Kunica* court concluded, the postbankruptcy assignee of such claims (Kunica, an insider of the corporate debtor, who apparently gave only nominal consideration [233 BR at 49, 52]) had no standing to pursue such claims in litigation (*id.* at 57).

At first blush, *Kunica* might appear to support a finding of no standing in this case. Closer inspection reveals, however, that *Kunica* is distinguishable, even aside from the fact that it involved a corporate debtor's chapter 11 bankruptcy case rather than, as here, an individual debtor's chapter 7 case. The *Kunica* court observed that it "militate[d] in favor" of the finding of no standing in that case that, "given that Sci-O-Tech [the debtor] obtained its dismissal after its [bankruptcy] case was fully administered and all of its assets scheduled, it arguably obtained *the functional equivalent of a discharge*" (233 BR at 55 [emphasis added]). Specifically, the Sci-O-Tech bankruptcy case had been dismissed after Sci-O-Tech, with court approval, had sold substantially all of its assets (other than the undisclosed claims) and had distributed the proceeds of the sale to its creditors (*id.* at 51-52, 55). Thus, even though Sci-O-Tech did not formally receive a discharge, the end result of the dismissed bankruptcy proceeding was that Sci-O-Tech's creditors were left without recourse (aside from the undisclosed claims) to recover what Sci-O-Tech owed them—which, as the court said, was "the functional equivalent of a discharge." In this case, by contrast, Lichtenstein's bankruptcy case did not result in any impairment of his creditors' ability to collect their debts from him once the automatic stay was lifted. Rather, the case was dismissed before there had been any administration of assets or restructuring of debt. Since Lichtenstein thus did not obtain "the functional equivalent of a discharge" as a result of his bankruptcy filing, the dismissal of the bankruptcy case had the effect, pursuant to 11 USC § 349 (b) (3), of restoring his standing to assert his alleged counterclaims, defenses and offsets in this action, notwithstanding his failure (which we obviously do not condone) to disclose such matters in the bankruptcy case (*see Central Jersey Freightliner, Inc. v Freightliner Corp.*, 987 F Supp 289, 294 [D NJ 1997]).[2]

BNRA further argues that, even if Lichtenstein has standing to pursue his alleged counterclaims, defenses and setoffs in this

---

**2.** Our conclusion is bolstered by the fact that Lichtenstein's bankruptcy petition, although it failed to disclose his alleged counterclaims, defenses and setoffs in this action, did disclose the pendency of the action itself. Moreover, BNRA itself was obviously aware throughout the pendency of the bankruptcy case of the matters asserted in Lichtenstein's previously filed answer herein, and, therefore, cannot claim to have been prejudiced by Lichtenstein's failure to disclose such matters in the bankruptcy case.

action, he is precluded from so doing by the doctrine of judicial estoppel. This argument is also unavailing. "The doctrine of judicial estoppel, which, in a bankruptcy context, bars a party from pursuing claims not listed in a bankruptcy proceeding that resulted in the party's discharge, does not apply in the absence of a final determination in the bankruptcy proceeding endorsing the party's inconsistent position concerning his or her assets" (*Koch v National Basketball Assn.*, 245 AD2d 230, 230-231 [1997] [citations omitted]; *see also Morton v Rifkin*, 278 AD2d 129, 130 [2000]). Here, not only did Lichtenstein not obtain a discharge in his bankruptcy case, the Bankruptcy Court never entered any order endorsing the position Lichtenstein took in the bankruptcy case concerning his assets and liabilities. To the contrary, the Bankruptcy Court simply denied him a discharge, assessed sanctions against him, and lifted the automatic stay. Accordingly, Lichtenstein is not judicially estopped to pursue his alleged counterclaims, defenses and setoffs in this action.

For the foregoing reasons, BNRA is not entitled, at this juncture, to summary judgment in its favor on the ultimate issue of liability. On this record, however, BNRA is entitled to partial summary judgment dismissing Lichtenstein's tenth affirmative defense of laches, and we modify the November 2003 order to grant such relief. To the extent Lichtenstein's claim of laches is based on BNRA's having permitted this action to lie dormant for certain extended periods of time, he has not stated a defense, as a matter of law, since he has not demonstrated that such periods of dormancy in the litigation (in which he evidently acquiesced) caused him any cognizable prejudice (*see Matter of Barabash*, 31 NY2d 76, 81 [1972]). To the extent Lichtenstein asserts the laches defense on the basis of BNRA's delay in commencing this action at law (which was timely under the applicable six-year statute of limitations [CPLR 213 (2)]), the defense of laches is unavailable (*see Matter of American Druggists' Ins. Co.*, 15 AD3d 268 [2005], citing *Republic Ins. Co. v Real Dev. Co.*, 161 AD2d 189, 190 [1990]). Concur—Mazzarelli, J.P., Andrias, Friedman, Nardelli and Gonzalez, JJ.