

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00195-CV

TERRY REVELL                                                    APPELLANT

V.

MORRISON SUPPLY COMPANY,                                        APPELLEE
LLC

----------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 2014-001828-2

----------

## OPINION

----------

Appellant Terry Revell appeals the trial court's take-nothing judgment in favor of appellee Morrison Supply Company, LLC (Morrison Supply). In two issues, he contends that the trial court erred by granting Morrison Supply's traditional motion for summary judgment on the basis of his alleged lack of standing. We reverse the trial court's judgment and remand this case to that court for further proceedings.

**Background Facts**

Revell sued Morrison Supply. In his original petition, he pled that in February 2013, while he was at Morrison Supply's business, one of Morrison Supply's employees caused 4,000 pounds of pipe to fall on him, which caused him to suffer severe injuries. He brought a claim for negligence and sought damages.

Morrison Supply answered the suit by pleading that Revell lacked standing. Specifically, Morrison Supply pled in its first amended answer that Revell had previously filed for chapter 13 bankruptcy;[1] that his negligence claim against Morrison Supply, which was based on an injury occurring during the bankruptcy case, was property of the bankruptcy estate; and that he therefore had no standing to pursue the claim.

Morrison Supply filed a traditional motion for summary judgment on the standing issue. In the motion, Morrison Supply argued in part,

> [Revell] has no standing because any interest he had in the instant action was transferred to his bankruptcy estate before he sued. As such, there is no controversy between [him and] . . . Morrison Supply. Further, because [Revell] failed to disclose his claim to the bankruptcy court, despite his affirmative duty to do so, the claim did not return to him when his bankruptcy case was dismissed and closed.

---

[1]*See* 11 U.S.C.A. §§ 1301–30 (West 2016). Chapter 13 allows wage-earning debtors to "reorganize with a repayment plan as an alternative to seeking a complete discharge of debts through the . . . liquidation process." *In re Meza*, 467 F.3d 874, 877 (5th Cir. 2006).

To its summary judgment motion, Morrison Supply attached evidence showing that Revell filed his chapter 13 bankruptcy petition in December 2012, that he filed an amended bankruptcy plan that same month, that creditors objected to the confirmation of the plan, that the trustee filed a motion to dismiss for Revell's failure to obtain timely confirmation of the plan in February 2013, and that the bankruptcy court dismissed the case in April 2013 while explicitly stating that Revell's debts were not discharged.[2] The evidence also showed that Revell never formally disclosed his potential claim against Morrison Supply as an asset in any document he filed with the bankruptcy court even though one schedule asked him to list "contingent and unliquidated claims of every nature."

Revell responded to Morrison Supply's summary judgment motion. He argued, in part, that he had met any disclosure requirement because his wife had verbally informed the bankruptcy trustee about his injury at Morrison Supply, that any property vested in the bankruptcy estate was revested in him when the bankruptcy case was dismissed, and that Morrison Supply's motion was based on a "discredited" and "rogue" case from this court, *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 700–03 (Tex. App.—Fort Worth 2006, pet. denied).[3] He also contended that Morrison Supply would receive a windfall if the trial court granted summary judgment on the standing argument, stating,

---

[2]Another document from the bankruptcy court's record shows that the amount of "unsecured claims discharged without payment" was "$0.00."

[3]We discuss *Kilpatrick* below.

3

This Court must ask itself: who is prejudiced if this case proceeds? Because there was no bankruptcy plan ever confirmed and the bankruptcy was dismissed, [Revell's] creditors have full collection rights and [Revell] is still obligated to pay each creditor in full. If this case proceeds, [Morrison Supply's] obligations remain exactly the same as they would have had the bankruptcy trustee brought the claims: to pay [Revell] damages only in the event a jury determines they have liability.

Finally, Revell contended that a federal statute—11 U.S.C.A. § 349(b)(3) (West 2015)—unambiguously revested all assets (including all potential claims) in him upon dismissal of the bankruptcy case.

To his response, Revell attached summary judgment evidence, including affidavits from him and his wife. Revell testified through his affidavit that his injuries occurred in February 2013 but that he did not realize that he "had a claim at that point." He stated that he learned he had a claim against Morrison Supply well after the dismissal of the bankruptcy case, when his attorney in this case completed the investigation about the incident leading to his injuries. Revell's wife swore that after Revell was injured, she called the bankruptcy trustee to inform the trustee about the injury. She stated,

The Trustee told me that the bankruptcy court has no sympathy for injuries and our case would be dismissed if we were unable to timely make our payments. I told them there was no way to make a payment and thought the case would just be dismissed. I had no idea my husband actually had a claim at that point.

A few days after calling the Trustee, Terry continued to talk about how his injuries occurred[,] and I thought [Morrison Supply] should be held responsible. We met with an attorney a few days later. The attorney took the case under investigation. I was unsure if a case would be filed until after the investigation was complete. After the attorney received all the information, he let us know he was

4

going to file a lawsuit on behalf of Terry. This was about 14 months after the injuries occurred.

In its reply to Revell's response, Morrison Supply contended, in part, that although Revell may have disclosed his injury during the bankruptcy case, he had not disclosed a potential cause of action formally through schedules as required. Morrison Supply also argued that section 349(b)(3) did not revest the potential claim in Revell after the bankruptcy's dismissal because the potential claim arose during the pendency of the bankruptcy (rather than before its commencement) and because section 349(b)(3) does not apply when a party fails to disclose an asset in the bankruptcy court.

The trial court granted Morrison Supply's summary judgment motion and ordered that Revell take nothing. Revell brought this appeal.

## Revell's Standing

In his two issues, Revell contends that the trial court erred by granting Morrison Supply's summary judgment motion based on his alleged lack of standing because his chapter 13 bankruptcy case was dismissed,[4] the property subject to the bankruptcy revested in him, there is no prejudice to the creditors or Morrison Supply by allowing him to proceed on his claim in this suit, and a genuine issue of material fact exists concerning whether he adequately disclosed

---

[4]Revell argues in part, "The trial court erred in finding that the personal injury claim belonged to the bankruptcy estate and [finding that] once the bankruptcy estate was dismissed, Revell was deprived of standing to bring the claim."

his potential claim in the bankruptcy case by verbally informing the trustee about his injuries. Morrison Supply contends that Revell's negligence claim is the property of his bankruptcy estate and that he therefore lacks standing to assert the claim in this suit. Morrison Supply also contends that while Revell may have disclosed his injuries to the trustee, he did not properly disclose the potential claim in the bankruptcy case by amending his personal property schedule, and the dismissal of Revell's bankruptcy case did not revest in him property that he had failed to disclose.

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A defendant that conclusively negates a plaintiff's standing is entitled to summary judgment. *See Bland ISD v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000); *Duque v. Wells Fargo, N.A.*, 462 S.W.3d 542, 550 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Standing is a component of subject matter jurisdiction that focuses on who may properly bring a claim. *Lake v. Cravens*, 488 S.W.3d 867, 885, 888 (Tex. App.—Fort Worth 2016, no pet.) (op. on reh'g); *City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 244 (Tex. App.—Fort Worth 2007, pet. denied) ("The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome."). A court must have subject matter jurisdiction to adjudicate a dispute, and without it, the merits of a case may not be reached. *Norris v. Brookshire Grocery Co.*, 362 S.W.3d 226, 231 (Tex. App.—Dallas 2012, pet. denied).

As both parties focus their briefing and their contentions concerning standing, in part, on our prior decision in *Kilpatrick*, we will begin by discussing that decision. There, the plaintiff in a state case concerning the ownership of certain stock had filed separate federal bankruptcy petitions in 1990, 1995, and 1996 without disclosing his ownership of the stock as an asset in any of the bankruptcy cases. *Kilpatrick*, 205 S.W.3d at 693–95. The plaintiff received a discharge in the first bankruptcy, while the second and third bankruptcies were dismissed. *Id.* at 695. The defendants in the state litigation obtained a summary judgment on the basis that the stock was the property of the bankruptcy estates created by the bankruptcy filings and that, therefore, only the bankruptcy trustees had standing to bring claims related to the stock. *Id.* at 699. We upheld the summary judgment, stating,

> When a debtor files a bankruptcy petition, all of his property, including all legal and equitable interests, instantly becomes part of the bankruptcy estate. *Antonov v. Walters*, 168 S.W.3d 901, 904–05 (Tex. App.—Fort Worth 2005, pet. denied). When property passes into the bankruptcy estate, the debtor loses all right, title, and interest in the property. 11 U.S.C.A. § 541(a) (West [2016]).[5]

[5]Section 541 states that the commencement of a bankruptcy case creates an estate that holds the debtor's legal or equitable interests in property, with some exceptions. 11 U.S.C.A. § 541(a)(1); *see also Norris*, 362 S.W.3d at 231 ("[V]irtually all of a debtor's assets, including causes of action at the commencement of the case, vest in the bankruptcy estate upon the filing of a bankruptcy petition."). Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are typically extinguished unless the asset is abandoned by the trustee. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008); *see* 11 U.S.C.A. § 554(d) (West 2016) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."); *Norris*, 362 S.W.3d at 231.

When this occurs, a debtor also loses standing to pursue claims held by the bankruptcy estate. [*Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999).] The trustee, as the representative of the estate, gains exclusive standing to assert any claim arising from the violation of rights associated with the estate. *Id.* Here, [the plaintiff] asserts that because the 1995 and 1996 bankruptcy proceedings were dismissed before a final disposition was made, the . . . stock revested with him, giving him standing to bring this claim. We disagree.

When a bankruptcy case is dismissed, the property of the estate revests in the entity in which the property was vested immediately before the commencement of the case. 11 U.S.C.A. § 349(b)(3).[6] The practical effect of a dismissal is to "undo" the bankruptcy case by restoring all property rights to the person to whom they belonged immediately before the initiation of the case. *Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46, 53–55 (S.D.N.Y. 1999). *But there is an important caveat to this rule on which we base our decision: upon the dismissal of a bankruptcy case, the estate's assets revest in the debtor only if the assets were disclosed to the bankruptcy court when the debtor scheduled his assets. Id.* Here, [the plaintiff] filed two Chapter 13 bankruptcies in 1995 and 1996. As a result of these filings, all assets he held became the property of the bankruptcy estates. *See* 11 U.S.C.A. § 541(a). [The plaintiff] did not disclose any interest in . . . stock within his bankruptcy schedules as required pursuant to 11 U.S.C.A. § 541(a). Therefore, when the 1995 bankruptcy was dismissed, the 900 shares of . . . stock remained with the bankruptcy estate.

In making our decision, we have carefully considered the importance of the disclosure requirement in bankruptcy cases. Full disclosure of the debtor's assets is absolutely required when a bankruptcy case is first initiated, and the debtor is required to

---

[6]Section 349(b)(3) states that "[u]nless the court, for cause, orders otherwise, a dismissal" of a bankruptcy case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C.A. § 349(b)(3); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 484–85 (2d Cir. 2014) (holding that section 349(b)(3) controls over section 554(d) because after dismissal of a bankruptcy case, there is "no longer any bankruptcy estate . . . [and] no longer any property of the estate").

provide a complete schedule of his assets to the trustee.[7] *In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117, 120 S. Ct. 936 (2000). . . . Full disclosure is crucial to the integrity of bankruptcy proceedings; thus, we hold that all nondisclosures of assets, whatever the reason, must be treated the same. To hold otherwise would encourage a procedural end-run around the disclosure requirements. It would provide the opportunity for debtors to assert ignorance about ownership of an asset only to conveniently discover ownership of the asset at a later time. Hence, differentiating between intentional and unintentional disclosure would undermine the Bankruptcy Code's requirement of [disclosure], and we hold that all instances of nondisclosure of assets will be treated the same. It is for this reason that we accept the reasoning of *Kunica* and *hold that only disclosed assets will be revested to the debtor upon the dismissal of a bankruptcy proceeding.*

. . . Here, the 900 shares of stock remained with the bankruptcy estate upon the dismissal of the 1995 bankruptcy *because [the plaintiff] did not disclose the assets when the proceedings began.* . . . As such, the 900 shares of undisclosed . . . stock remained with the bankruptcy estate, and [the plaintiff] has no standing to assert claims arising from the sale of the 900 shares.

. . . [T]he law established in *Kunica* . . . applies to all bankruptcy proceedings: estate assets can revest in the debtor *only if the assets were disclosed to the bankruptcy court.*

*Id.* at 701–03 (emphases added) (footnote omitted).

---

[7]We have stated,

In a bankruptcy action, the debtor must disclose all assets including contingent or unliquidated claims. The duty to disclose is a continuing duty that requires the debtor to amend schedules and forms if circumstances surrounding the bankruptcy change. If the debtor knows enough information to suggest that she might have a cause of action, then she must disclose the potential cause of action.

*Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc.*, 221 S.W.3d 802, 806–07 (Tex. App.—Fort Worth 2007, pet. denied) (citations omitted).

The principal takeaway from our decision in *Kilpatrick* is that based on one federal district court decision—*Kunica*[8]—we held that the revesting of assets in a debtor that usually occurs upon the dismissal of a bankruptcy case under section 349(b)(3) does not occur when the assets were not disclosed in a bankruptcy schedule. *See id.* But this holding from *Kilpatrick* (along with the holding in *Kunica*, which *Kilpatrick* echoed), which is untethered to the plain and unambiguous revesting language of section 349(b)(3),[9] has been criticized by state and federal courts.

For example, in *Norris*, our sister intermediate appellate court in Dallas considered the question of whether a debtor lacked standing to litigate a lawsuit because of her failure to disclose the claim in her dismissed bankruptcy case.

---

[8]In *Kunica*, the court concluded that only disclosed assets revert to a debtor under section 349(b)(3) after dismissal. 233 B.R. at 54–55. The court stated that certain factors "militate[d] in favor" of that conclusion, including that the debtor in that case "obtained . . . dismissal after [the bankruptcy] case was fully administered and all of its assets scheduled, [so] it arguably obtained the functional equivalent of a discharge." *Id.* at 55. Similarly, although two of the bankruptcies at issue in *Kilpatrick* had been dismissed, it appears that the debtor received some relief because our opinion recites that the "creditors in all three bankruptcies were paid in full, with interest." 205 S.W.3d at 695. There is no indication in the record of this appeal that Revell received any relief from his debts during his bankruptcy.

[9]We generally apply a statute according to its plain and unambiguous language unless doing so would lead to an absurd result. *See Jack Cty. Appraisal Dist. v. Jack Cty. Hosp. Dist.*, 484 S.W.3d 228, 232 (Tex. App.—Fort Worth 2016, no pet.); *see also Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) ("A court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written.").

362 S.W.3d at 229, 231. The Dallas court noted that the "basic purpose" of section 349(b)(3)'s revesting language is to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *Id.* at 232 (citing *In re Petty*, 848 F.2d 654, 655 (5th Cir. 1988), *cert. denied*, 488 U.S. 1009 (1989)). Applying section 349(b)(3)'s plain wording, the court concluded that Norris's lawsuit revested in her at the dismissal of her bankruptcy despite her failure to disclose it during the bankruptcy; the court explicitly rejected our contrary holding in *Kilpatrick*.[10] *Id.*

Similarly, in *Crawford*, a federal court of appeals, rejecting *Kunica*'s holding, held that a debtor's claim revested in her despite her failure to disclose it during a dismissed bankruptcy. 758 F.3d at 485. The court noted that section 349(b)(3)'s revesting language is broad and "makes no distinction between [assets] that were listed in the debtor's schedule . . . and those that were not." *Id.* at 484. The court stated that the "dismissal of [a] case under [section] 349, automatically revesting all of the property of the estate in its prior owners, means that there are no assets remaining to be abandoned or administered." *Id.* at 485.

---

[10]Morrison Supply contends that "Revell does not argue on appeal that his claim revested in him when his bankruptcy case was dismissed and closed." We conclude that he does so in his original brief by challenging *Kilpatrick* and by relying on *Norris* while quoting its discussion of section 349(b)(3) and in his reply brief by explicitly contending that the dismissal of the bankruptcy case vested this claim in him under section 349(b)(3). Morrison Supply also argues that *Norris* is distinguishable because it concerned a chapter 7 bankruptcy, but Morrison Supply does not explain why this difference affects the application of section 349(b)(3).

Several other courts across the country have joined these criticisms of the holdings in *Kunica* and *Kilpatrick* and have applied the plain language of section 349(b)(3) to conclude that a debtor had standing to bring a suit despite the debtor's failure to disclose the claim in a dismissed bankruptcy. *See Mackall v. JPMorgan Chase Bank, N.A.*, 356 P.3d 946, 950 (Colo. App. 2014) (holding that upon the dismissal of a bankruptcy case, "[a]ll of the property that was transferred from the debtor to the estate revests in the debtor regardless of whether the debtor disclosed it to the bankruptcy court"); *Ass'n Res., Inc. v. Wall*, 2 A.3d 873, 889 (Conn. 2010) (concluding that under section 349(b)(3), the "failure to disclose a cause of action in bankruptcy proceedings does not preclude the assertion of that claim in proceedings instituted after the dismissal of the bankruptcy proceedings"); *B.N. Realty Assocs. v. Lichtenstein*, 801 N.Y.S.2d 271, 276 (N.Y. App. Div. 2005) ("[T]he dismissal of the bankruptcy case had the effect, pursuant to [section 349(b)(3)], of restoring [the debtor's] standing to assert his [claims] in this action, notwithstanding his failure (which we obviously do not condone) to disclose such matters in the bankruptcy case . . . .").[11] These courts' conclusions are supported by the longstanding principle that the dismissal of a bankruptcy case has the effect of the case having never been filed. *See In re Dumontier*, 389 B.R. 890, 897 (Bankr. D. Mont. 2008); *In re*

---

[11]We have not found any case citing *Kilpatrick* in support of the proposition that a debtor's failure to disclose an asset precludes revesting of the asset under section 349(b)(3).

12

*Derrick*, 190 B.R. 346, 350 (Bankr. W.D. Wis. 1995); *see also In re Income Prop. Builders, Inc.*, 699 F.2d 963, 965 (9th Cir. 1983) (op. on reh'g) ("After an order of dismissal, the debtor's debts and property are subject to the general laws, unaffected by bankruptcy concepts."); *In re Garnett*, 303 B.R. 274, 278 (E.D.N.Y. 2003) (explaining that "dismissal undoes the bankruptcy estate"); *In re Sports & Sci., Ind., Inc.*, 95 B.R. 745, 747 (Bankr. C.D. Cal. 1989) ("[Section 349(b)(3)] attempts to place the parties in the same position they had prior to the commencement of the case.").

The language of section 349(b)(3) is unqualified; it states simply that unless a court orders otherwise, the dismissal of a bankruptcy revests the estate's property in the entity in which the property was previously vested. 11 U.S.C.A. § 349(b)(3). Nothing in the section states that revesting is subject to disclosure requirements. *Id.* Rather, the section protects the interests of creditors and the bankruptcy process by allowing a court, for cause, to alter the general rule of revesting upon dismissal on a case-by-case basis. *Id.* Thus, if a bankruptcy court finds that undisclosed assets, if in existence, could impact the decision to dismiss, or if the debtor is receiving a "functional equivalent of a discharge" through the dismissal (as in *Kunica*), or if other considerations exist impacting the fairness to debtors or creditors of the revesting of undisclosed assets, the court has the authority to fashion an appropriate remedy in its

13

dismissal order.[12] *See id.*; *Kunica*, 233 B.R. at 55; *see also Iannini v. Winnecour*, 487 B.R. 434, 439 (W.D. Pa. 2012) ("[A] bankruptcy court has the ability under [section 349] to retain jurisdiction over the administration of the estate in its dismissal order, if it finds cause to do so.").

We conclude that the "caveat" to section 349(b)(3) that formed the basis of our holding in *Kilpatrick* is neither supported by the plain, unambiguous language of that section nor necessary to protect the interests of creditors or the integrity of the bankruptcy process. Therefore, we hold that to that extent, our decision in *Kilpatrick* was erroneous, and we overrule it.[13] We hold that under the plain language of section 349(b)(3), the dismissal of a bankruptcy case revests the property of the bankruptcy estate "in the entity in which such property was vested immediately before the commencement of the case" even if the debtor did not properly disclose the property during the bankruptcy. 11 U.S.C.A. § 349(b)(3); *see Crawford*, 758 F.3d at 485; *Norris*, 362 S.W.3d at 231–32. Thus, when the bankruptcy court dismissed Revell's bankruptcy petition, property that the estate once held revested in him, and he has standing to pursue his claim in this suit.[14] *See Norris*, 362 S.W.3d at 231–32; *B.N. Realty Assocs.*, 801 N.Y.S.2d at 276.

---

[12]The bankruptcy court did not do so here.

[13]Furthermore, we now expressly reject the holding in *Kunica*.

[14]Given this holding, we need not decide other legal disputes presented in the parties' briefs, including whether Revell otherwise had standing to bring this suit based on distinct aspects of a chapter 13 bankruptcy and whether Revell adequately disclosed his potential claim to the bankruptcy trustee by informing

To the extent that Morrison Supply contends that Federal Rule of Bankruptcy Procedure 6009 conflicts with this holding, we disagree. That rule states, "With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding *in behalf of the estate* before any tribunal." Fed. R. Bankr. P. 6009 (emphasis added). We conclude that this rule does not apply here because upon the dismissal of a bankruptcy case, no bankruptcy estate continues to exist. *See Crawford*, 758 F.3d at 485; *Garnett*, 303 B.R. at 278; *Mackall*, 356 P.3d at 951.

Morrison Supply argues that the "plain terms of [section] 349 provide that assets that existed **before** the commencement of a bankruptcy return to the person . . . that owned those assets before the bankruptcy." Thus, according to Morrison Supply, because Revell acquired his potential claim during his bankruptcy (when he was injured) rather than before it, section 349(b)(3) does not apply. We cannot agree because the effect of section 349(b)(3) is to divest the bankruptcy estate of all property upon a case's dismissal, to revest the property in the person or entity that previously owned it, and to allow parties to proceed as if a bankruptcy case had not been filed. *See Crawford*, 758 F.3d at 485; *Income Prop. Builders, Inc.*, 699 F.2d at 965; *see also In re Edwards*, 538 B.R. 536, 541–42 (Bankr. S.D. Ill. 2015) (holding that section 349(b)(3) required

---

the trustee about his injury. *See* Tex. R. App. P. 47.1; *QuikTrip Corp. v. Goodwin*, 449 S.W.3d 665, 677 n.19 (Tex. App.—Fort Worth 2014, pet. denied).

15

the return of the debtor's postpetition wages after dismissal); *In re Hamilton*, 493 B.R. 31, 39 (Bankr. M.D. Tenn. 2013) (reaching a similar conclusion). To "hold otherwise would be to fail to give full effect to [section] 349(b)'s broad scope." *See Edwards*, 538 B.R. at 542; *see also In re Slaughter*, 141 B.R. 661, 663 (Bankr. N.D. Ill. 1992) ("It would be anomalous to give prepetition property of the estate to the debtor under [section] 349(b)(3) and postpetition property of the estate to creditors.").

For all of these reasons, we conclude that we must reverse the trial court's summary judgment in favor of Morrison Supply on the basis of Revell's alleged lack of standing. We sustain Revell's first issue, which is dispositive.

## Conclusion

Having sustained Revell's first, dispositive issue, we reverse the trial court's judgment and remand this case to the trial court for further proceedings.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED: August 29, 2016

16